[No. B077599. Second Dist., Div. Three. Sept. 26, 1995.]

RUTH HIGHTOWER et al., Plaintiffs and Appellants, v.
FARMERS INSURANCE EXCHANGE et al., Defendants and
Respondents.

**COUNSEL**

Michael J. Piuze and John Keiser for Plaintiffs and Appellants.

Horvitz & Levy, Mitchell C. Tilner, Andrea M. Gauthier, Carter & Chuang and Aviv L. Tuchman for Defendants and Respondents.

**OPINION**

**KLEIN, P. J.**—Plaintiffs and appellants Ruth Hightower (Hightower), Alicia Flowers (Flowers) and Coralene Hayes (Hayes) (sometimes collectively referred to as Hightower) appeal a judgment following a grant of judgment on the pleadings in favor of defendant and respondent Farmers Insurance Exchange (Farmers).

The issues presented are whether exhaustion of administrative remedies under the California Automobile Assigned Risk Plan (the CAARP) is a prerequisite to the filing of a bad faith action against an insurer under an uninsured motorist policy, and whether a cause of action may be stated against an insurer for demanding arbitration of a claim for uninsured motorist benefits even where the insurer's liability is clear.

We conclude the CAARP remedy does not apply to every dispute between an insurer and one who is insured under the assigned risk system. The CAARP regulatory scheme extends only to matters governed by the assigned risk law and does not provide a forum for disputes involving the adjustment of claims. Therefore, Hightower was not required to allege an exhaustion of the administrative remedy.

Further, while Insurance Code section 11580.26, subdivision (b), immunizes an insurer from liability for the bare act of requesting arbitration of an uninsured motorist claim, it does not insulate an insurer from liability toward its insured for failing to attempt in good faith to effectuate a prompt and fair settlement of a claim in which liability is reasonably clear, or for other wrongful acts.

For these reasons, the judgment is reversed and the matter is remanded with directions.

## Factual and Procedural Background

In November 1983, Hightower and her daughters, Flowers and Hayes, were involved in a car accident with an uninsured motorist. They made a claim for uninsured motorist benefits under Hightower's insurance policy with Farmers. Said policy had been issued to Hightower and assigned to Farmers through the CAARP. Farmers disputed the claim and the matter was submitted to arbitration. The arbitration concluded in Hightower's favor in February 1987, following which Farmers paid the policy benefits to Hightower.

On September 16, 1988, Hightower filed suit against Farmers. The complaint alleged five causes of action: (1) breach of insurance contract/bad faith refusal to pay benefits; (2) violation of Insurance Code section 790 et seq.;[1] (3) negligent infliction of emotional distress; (4) intentional infliction of emotional distress; and (5) conspiracy to violate the Insurance Code.

The gravamen of Hightower's action was that Farmers refused her demand on July 19, 1984, to pay the uninsured motorist policy limits of $30,000, even though liability therefor was clear, and delayed paying the benefits due under the policy until "ordered to do so by an arbitrator on February 20, 1987."

In June 1990, the trial court sustained Farmers's demurrers to Hightower's emotional distress and conspiracy claims without leave to amend, leaving extant only the first and second causes of action.

On April 30, 1993, Farmers moved for judgment on the pleadings on the two remaining causes of action, the claims for bad faith refusal to pay benefits and violation of Insurance Code section 790. Farmers based its motion on two separate grounds: Insurance Code section 11580.26 bars the imposition of liability against an insurer for exercising the right to request arbitration of an uninsured motorist claim; and Hightower failed to allege she had exhausted her administrative remedy under the CAARP.

On June 28, 1993, the trial court granted Farmers's motion on the ground Hightower had failed to exhaust her administrative remedy. Hightower appealed the judgment.

---

[1] The elimination of a private right of action under Insurance Code section 790.03 by *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] does not bar Hightower's statutory cause of action, which was filed before that decision became final. (*Id.*, at pp. 304-305.) First party section 790.03 of Insurance Code claims which were on file before the finality of *Moradi-Shalal* remain viable. (*Zephyr Park* v. *Superior Court* (1989) 213 Cal.App.3d 833, 840 [262 Cal.Rptr. 106].)

CONTENTIONS

Hightower contends the doctrine of exhaustion of administrative remedies does not apply because the administrative scheme found in the CAARP regulations does not provide any remedy for the failure to pay benefits timely.

Farmers avers the judgment must be affirmed due to Hightower's failure to exhaust the administrative remedy and because Insurance Code section 11580.26 bars any cause of action against an insurer for exercising its right to arbitration of an uninsured motorist claim.

DISCUSSION

1. *Standard of appellate review.*

■ Because a motion for judgment on the pleadings is the functional equivalent of a general demurrer, the same rules apply. (*People* v. *$20,000 U.S. Currency* (1991) 235 Cal.App.3d 682, 691 [286 Cal.Rptr. 746].)

The motion is confined to the face of the pleading under attack, and all facts alleged in the complaint must be accepted as true. (*Rangel* v. *Interinsurance Exchange* (1992) 4 Cal.4th 1, 7 [842 P.2d 82, 14 Cal.Rptr.2d 783].) With these principles in mind, we consider whether Hightower's complaint alleged facts sufficient to state a cause of action.

2. *Purpose and scope of the CAARP.*

The CAARP was created by the Legislature to provide insurance to marginal motorists who, because they were considered bad risks, were otherwise unable to secure such insurance. These persons included violators of traffic laws, persons with minor physical disabilities, youthful and older drivers, and of course, persons with poor driving records. (*California State Auto. Assn. Inter-Ins. Bureau* v. *Garamendi* (1992) 6 Cal.App.4th 1409, 1413 [8 Cal.Rptr.2d 366].) To this extent the plan complements the state's financial responsibility laws by providing a limited fund of insurance to compensate persons injured by drivers who otherwise would be uninsurable. (*Ibid.*)

Insurance Code section 11620 gives the Insurance Commissioner a mandate to design and implement a reasonable plan for the equitable apportionment of assigned risks among insurers. In general, insurers receive their equitable assignments of drivers based upon a ratio or quota, theoretically derived from the percentage of voluntary liability policies they write in the

state. After a particular driver is assigned to an insurer pursuant to a " 'reasonable' " plan, the insurer is required to issue a policy to the driver. (*California State Auto. Assn. Inter-Ins. Bureau v. Garamendi, supra,* 6 Cal.App.4th at p. 1413.)

The CAARP regulations are set forth in title 10 of the California Code of Regulations, at section 2400 et seq.[2] Section 2400 declares the purpose and scope of the assigned risk plan is as follows: "(a) To provide a means by which risks of applicants for automobile bodily injury and property damage liability insurance who are eligible for such insurance but are unable to procure it through ordinary methods may be assigned to insurers admitted to transact liability insurance; [¶] (b) To make medical payments insurance available, subject to the conditions hereafter stated, to four-wheel vehicles classified and rated as private passenger automobiles; and [¶] (c) To establish a procedure for the equitable apportionment of such applicants among all such insurers for insurance of such risks."

The CAARP regulations go on to provide to whom the plan is available (§ 2404), to require California admitted liability insurers to participate (§ 2405) and to specify the amount and type of coverage to be afforded including uninsured motorist protection (§§ 2406 to 2408). Thereafter, there are provisions governing the administration of the plan (§ 2420 et seq.); eligibility requirements for applicants (§ 2430 et seq.); the basis and method of assignment of risks to insurers (§ 2445 et seq.); acceptances and rejections by insurers of assignments (§ 2450 et seq.); assigned risk rates and premiums (§ 2460 et seq.); commissions (§ 2462); policy cancellations (§ 2470 et seq.); expirations and renewals (§ 2480 et seq.); finances and assessments (§ 2490 et seq.); and records, statistics and reports (§ 2492 et seq.).

The CAARP administrative remedy in issue is found in an obscure regulation, section 2495. That section states in relevant part: "Any applicant, insured or insurer under the [assigned risk] plan who is affected by any act, ruling, decision or order of an insurer, . . . and believes such act, ruling, decision or order to be in conflict with or not authorized by the provisions of the plan or by the law, may appear [*sic:* appeal] in writing in the first instance to the [Governing Committee of the plan], setting forth his grounds for such belief. . . . The committee shall review all evidence and consider all statements, arguments, and contentions at a hearing upon not less than five days' notice to the parties to the matter, and within 10 days thereafter shall notify such parties of its decision which shall be binding upon all parties subject to appeal to the commissioner. [¶] If any party to a matter

---

[2]Unless otherwise specified, all further section references are to title 10 of the California Code of Regulations.

which has been so appealed to the committee is dissatisfied with the decision of the committee upon such appeal, he may appeal to the commissioner who shall hear the parties, review the matter and render a decision which shall be binding upon all parties." (§ 2495.)

### 3. *Farmers misconstrues the scope of the CAARP remedy.*

■ Seizing upon the language of section 2495 that any insured under the assigned risk plan "who is affected by any act . . . of an insurer" and who believes such act violates the provisions of the plan or the law may appeal to the committee (§ 2495), Farmers contends Hightower had an administrative remedy for her claim that Farmers' refusal to pay benefits violated Insurance Code section 790 et seq. as well as the implied covenant of good faith and fair dealing. Therefore, according to Farmers, Hightower's failure to exhaust said remedy precludes her resort to the judicial process.

Under Farmers's theory, any driver who happens to be insured under the CAARP and who is aggrieved by an insurer's conduct would be required to appeal first to the CAARP committee (§ 2495), then to the commissioner (§ 2495), and presumably, would be limited to judicial review thereafter pursuant to Code of Civil Procedure section 1094.5. Farmers's argument is without merit inasmuch as the CAARP remedy has no application to a dispute arising out of a claim for policy benefits.

The administrative remedy found in the CAARP regulations extends solely to matters regulated by the CAARP, not to all disputes involving persons who happen to be insured under the CAARP. An overview of the CAARP regulatory scheme belies Farmers's argument as to the broad scope of the administrative remedy provided for in section 2495. Clearly, the CAARP committee has jurisdiction over matters such as the issuance of an assigned risk policy, the setting of rates for the purchase of such policies, and the manner in which risks are assigned to insurers.

The CAARP committee is not empowered, however, to resolve disputes concerning the *adjustment of claims* under an assigned risk policy. Such disputes are entirely beyond the scope of the assigned risk law (Ins. Code, § 11620 et seq.) and the implementing regulations (§ 2400 et seq.).

Another fatal flaw in Farmers's argument is that Insurance Code section 11580.2, subdivision (f), requires uninsured motorist policies to provide that "the determination as to whether the insured shall be legally entitled to

recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer *or, in the event of disagreement, by arbitration.*" (Italics added.) Because Hightower has a statutory right to arbitration of her uninsured motorist claim, Farmers's contention that Hightower was required to prosecute her claim through the administrative remedy of section 2495 and to seek judicial review thereafter pursuant to Code of Civil Procedure section 1094.5, is devoid of merit.

In sum, because the CAARP administrative remedy is inapplicable to disputes involving the adjustment of claims, the trial court erred in ruling the complaint was infirm for Hightower's failure to allege an exhaustion of the administrative remedy.

*4. An insurer cannot avoid bad faith liability arising out of its handling of an uninsured motorist claim merely by requesting arbitration of the claim.*

■ As discussed above, by statute, uninsured motorist policies are required to provide for arbitration of claims disputes in the event the insurer and insured fail to reach agreement. (Ins. Code, § 11580.2, subd. (f).) Our focus is on Insurance Code section 11580.26, subdivision (b), which provides in relevant part: "No cause of action shall exist against either an insured or insurer from exercising the right to request arbitration of a claim under this section or Section 11580.2."

Farmers contends this provision confers a broad immunity upon any party exercising the statutory right to arbitration of an uninsured motorist claim, and therefore Hightower cannot allege Farmers acted in bad faith by exercising its right to arbitrate rather than settling the claims. It appears no published opinion has yet interpreted this aspect of Insurance Code section 11580.26, subdivision (b). In approaching the question, we are mindful of certain fundamental principles governing uninsured motorist legislation as well as the insurer/insured relationship.

a. *General principles.*

■ Uninsured motorist legislation is remedial in nature, "enacted for the purpose of forcing insurers to make available coverage by which insureds can protect themselves from the menace of uninsured motorists." (*Hefner* v. *Farmers Ins. Exchange* (1989) 211 Cal.App.3d 1527, 1530 [260 Cal.Rptr. 221].) Ambiguous language in the statute must be given a construction that

advances, not thwarts, its remedial purpose. (*National Auto. & Casualty Ins. Co.* v. *Frankel* (1988) 203 Cal.App.3d 830, 836, fn. 2 [250 Cal.Rptr. 236].)[3]

■ Further, it is well settled the implied covenant of good faith and fair dealing in the insurance contract requires each party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement. (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141].) When an insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort. (*Ibid.*) For the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the agreement, it must give "at least as much consideration to the latter's interests as it does to its own." (*Id.,* at pp. 818-819.)

■ Thus, the mere availability of an arbitration procedure does not insulate an insurer from liability for bad faith in its handling of an uninsured motorist claim. In *Richardson* v. *Employers Liab. Assur. Corp.* (1972) 25 Cal.App.3d 232, 236 [102 Cal.Rptr. 547], the plaintiffs obtained a judgment against their insurer for its refusal to settle in good faith, *without arbitration,* their claims for the policy limits of $10,000 apiece under the uninsured motorist provisions of the policy. The judgment was reversed and remanded for a new trial solely upon the issue of damages. (*Id.,* at p. 246.) With respect to the insurer's handling of the claim, the reviewing court concluded: "[The insurer] deliberately, willfully and in bad faith withheld payment of the Richardson claim months after it knew the claim to be completely valid; it forced an arbitration hearing on a claim against which it already knew that it had no defense; even after the award was made, it instructed its local office to attempt 'to make the best possible settlement,' and forced plaintiffs to resort to litigation to have the award judicially confirmed. This conduct toward its own insured was unconscionable, and constituted a tortious breach of contract. [Citations.]" (*Id.,* at p. 239.)[4]

> b. *Adoption of Insurance Code section 11580.26, subdivision (b), did not abrogate insurer's duty of good faith in handling uninsured motorist claims.*

We are aware that *Richardson* predates the adoption of Insurance Code section 11580.26, subdivision (b), in 1983. However, *Richardson* serves to

---

[3]*National Auto. & Casualty Ins. Co.* was disapproved on other grounds by *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 743, fn. 11 [29 Cal.Rptr.2d 804, 872 P.2d 143], on an issue of appellate procedure.

[4]*Richardson* was disapproved on other grounds by *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 580-581, fn. 10 [108 Cal.Rptr. 480, 510 P.2d 1032]. The disapproval was directed at *Richardson*'s statement that to support an award of damages for anxiety and emotional distress, there must be evidence of severe emotional distress. (*Richardson,* v. *Employers Liab. Assur. Corp., supra,* 25 Cal.App.3d at p. 241; *Gruenberg, supra,* 9 Cal.3d at pp. 580-581, fn. 10.)

illustrate the insurer's duty of good faith and fair dealing in the handling of an uninsured motorist claim. That duty was not abrogated by the enactment of this provision.

Under Farmers's interpretation of the statute, an insurer could "stonewall" uninsured motorist claimants in every case but avoid bad faith liability through the simple act of requesting arbitration and refusing to pay until ordered to do so by an arbitrator. We cannot ascribe such an intent to the Legislature.

The rules of statutory construction require courts to construe a statute to promote its purpose, render it reasonable, and avoid absurd consequences. (*Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 484-485 [208 Cal.Rptr. 724, 691 P.2d 272].) It is the duty of the courts to construe statutes so as to avoid a ludicrous result if at all possible. (*Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 9 [177 Cal.Rptr. 325, 634 P.2d 352].) Giving Insurance Code section 11580.26, subdivision (b) a reasonable interpretation, one which does not fly in the face of statutory and decisional law concerning an insurer's duties (see, e.g., Ins. Code, § 790.03; *Egan* v. *Mutual of Omaha Ins. Co., supra*, 24 Cal.3d at pp. 818-819), the enactment simply declares that the bare act of requesting arbitration of an uninsured motorist claim, without more, is not actionable.

Contrary to Farmers's argument, Insurance Code section 11580.26, subdivision (b), does not create a privilege to demand arbitration of any and all disputes, no matter how unreasonable. Where there is no issue reasonably to be resolved by arbitration, as in a case where the insured's damages plainly exceed policy limits and the liability of the uninsured motorist is clear, the failure to attempt to effectuate a prompt and fair settlement violates the insurer's statutory duties (Ins. Code, § 790.03, subd. (h)(5)) and gives rise to tort liability. Similarly, an insurer cannot shield other dilatory conduct, such as failing to investigate a claim, by the mere act of requesting uninsured motorist arbitration.[5]

### c. *Hightower entitled to amend.*

Here, Hightower pled Farmers knew it was obliged under the circumstances of this case to pay the policy limits demand of $30,000 on or before July 19, 1984.

---

[5]*Rangel* v. *Interinsurance Exchange, supra,* 4 Cal.4th at page 5, holding an uninsured motorist carrier did not act in bad faith by delaying payment on a claim while the insured's workers' compensation claim arising from the same accident was unresolved, is inapposite. In order to prevent double recovery, the Legislature has expressly permitted insurers to delay arbitration of uninsured motorist claims while a workers' compensation claim is pending, in the absence of a showing of good cause. (Ins. Code § 11580.2, subd. (f); *Rangel, supra,* 4 Cal.4th at p. 8.)

Farmers contends Insurance Code section 11580.26, subdivision (b), bars Hightower's bad faith claims based on its decision to await an arbitrator's ruling before paying uninsured motorist benefits.

Now that we have clarified the statute, Hightower is entitled to an opportunity to amend her complaint to plead facts upon which she bases her allegation that Farmers's failure to pay the claim by July 1984 and its insistence on arbitration were unreasonable.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to grant Hightower leave to file an amended complaint.

Hightower to recover costs on appeal.

Croskey, J., and Aldrich, J., concurred.

Respondents' petition for review by the Supreme Court was denied December 14, 1995.