David SINGER, Plaintiff–Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Defendant–Appellee.

No. 95–55441.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1996.

Decided May 21, 1997.

Matthew B.F. Biren, Matthew B.F. Biren and Associates, Los Angeles, California, for plaintiff-appellant.

Edmont T. Barrett, Los Angeles, California, for plaintiff-appellant.

Gary Gleb, Horvitz & Levy, Encino, California, Lance Orloff, Daniels, Baratta & Fine, Los Angeles, California for defendant-appellee.

Before: FLETCHER, BEEZER, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

We consider two issues: what constitutes compliance with the amount-in-controversy requirement where state law prohibits setting out of a monetary ad damnum in the complaint and whether judgment on the pleadings disallowing an insurance bad faith claim was proper.

## I. FACTS

Mr. Singer was injured in an automobile accident with an uninsured driver. He owned a State Farm Mutual Automobile Insurance Company policy, with uninsured motorist coverage subject to a $30,000 policy limit.

Negotiations between Mr. Singer and State Farm on his uninsured motorist claim did not go well. Ultimately he sued State Farm in the Superior Court of the State of California for breach of contract and breach of the covenant of good faith and fair dealing. The gist of his complaint was that State Farm stonewalled him until the eve of arbitration, even though liability was clear and the insurer knew that damages exceeded his $30,000 policy limit.

The defendant removed the case to federal court, based on diversity. California prohibits plaintiffs from setting out a monetary ad damnum, Cal.Code Civ.Proc. § 425.10(b), so the basis for the removal could not be the amount stated in the complaint. The notice for removal recited that the amount in controversy exceeded $50,000.

On the motion for remand, defense counsel submitted declarations to show that the amount in controversy exceeded $50,000. Plaintiff expressly conceded that it did. Plaintiff's counsel told the judge that the case was "absolutely" worth "considerably more" than $50,000. The judge wondered why plaintiff was then moving for remand on

the ground that the amount in controversy was insufficient. Plaintiff's counsel explained that "we are concerned under *Gaus* [*v. Miles, Inc.*, 980 F.2d 564 (9th Cir.1992) ] that we can litigate the case here and have the Ninth Circuit remand the matter for lack of subject matter jurisdiction, as they did in *Gaus*."

The district judge denied the motion for remand. Subsequently, the district court granted judgment on the pleadings under Federal Rule of Civil Procedure 12(c) in favor of State Farm. The district court held that the complaint did not allege a final judicial determination that the uninsured motorist was liable to Mr. Singer, and without that, State Farm could not be liable to Mr. Singer for bad faith under California law.

## II. ANALYSIS

### 1. Amount in Controversy.

The parties to this case were caught between the California statute prohibiting statement of an ad damnum, and the traditional federal removal framework, which bases removal on the amount stated in the ad damnum. Traditionally a complaint for money damages ends with the words, "Wherefore plaintiff demands judgment against defendant in the sum of ____ dollars and costs." Form 9, Appendix of Forms, Fed.R.Civ.P. At common law, a statement of the amount claimed was required, and was an upper limit on recovery. Benjamin J. Shipman, Common Law Pleading, 223, 487–89 (3d ed. 1923).

▮▮▮ In a state following the common law rule, there is a mechanical test of whether the amount in controversy requirement is met when a case is removed. The district court simply reads the ad damnum clause of the complaint to determine whether the "matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).[1] If the claim was "apparently made in good faith," then the sum claimed by the plaintiff controls for removal purposes unless "it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed."

1. When this case was filed the amount in controversy necessary for diversity jurisdiction had to "exceed[ ] the sum or value of $50,000, exclusive of interest and costs...." Congress subsequent-

The rule governing dismissal for want of jurisdiction in cases brought in the Federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.

*St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–90, 58 S.Ct. 586, 589–91, 82 L.Ed. 845 (1938) (footnotes omitted). In a removed case, unlike a case instituted in federal court, the plaintiff chose a state rather than federal forum. Because the plaintiff instituted the case in state court, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end." *Id.* at 290, 58 S.Ct. at 591.

California law formerly codified the common law rule: "If the recovery of money or damages be demanded, the amount thereof shall be stated." Cal.Code Civ.Proc. § 425.10(b) as set out in statutes 1971, ch. 244 § 23. But the law changed in 1974. As amended, California law now expressly prohibits the plaintiff in a personal injury case from stating how much money he demands:

ly amended 28 U.S.C. § 1332(a), raising the amount in controversy requirement to more than $75,000. Pub.L. 104–317, Title II, § 205(a), 110 Stat. 3850 (Oct. 19, 1996).

### § 425.10 Statement of facts; demand for judgment

A complaint or cross-complaint shall contain both of the following:

(a) . . . .

(b) A demand for judgment for the relief to which the pleader claims he is entitled. If the recovery of money or damages be demanded, the amount thereof shall be stated, unless the action is brought in the superior court to recover actual or punitive damages for personal injury or wrongful death, in which case the amount thereof shall not be stated.

Cal.Code Civ.Proc. § 425.10(b).

This amendment means that the mechanical system of *St. Paul Mercury,* for determining whether the amount in controversy exceeds $50,000 no longer works in California personal injury and wrongful death cases. The defendant's claim that the amount in controversy exceeds $50,000 does not enjoy the *St. Paul Mercury* presumption of accuracy that the plaintiff's does. The reason is that a plaintiff's ad damnum exceeding $50,-000 causes him to lose his selected forum, but defendant's claim supports moving the case to his preferred forum.

■ In *Gaus v. Miles, Inc.,* 980 F.2d 564 (9th Cir.1992), we held that a summary judgment obtained after removal had to be vacated because the amount in controversy requirement was not satisfied. There the Nevada statute prohibited a plaintiff from stating an amount in excess of $50,000 in the ad damnum clause. In *Gaus,* the plaintiff said in response to our order to show cause that damages sought were "in the millions of dollars," but the defendant who removed the case said that plaintiff's allegation "may be a procedural error" and apparently did not agree with it. *Id.* at 566. The defendant offered "no facts whatsoever" to support its claim that the matter in controversy exceeded $50,000. *Id.* at 567. We understand *Gaus* to mean that where the plaintiff does not claim damages in excess of $50,000 and the defendant offers "no facts whatsoever" to show that the amount in controversy exceeds $50,000, then the defendant has not borne the burden on removal of proving that the amount in controversy requirement is satisfied. *Id.*

■ Our interpretation of *Gaus* is consistent with and is based upon *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398 (9th Cir.1996). Where the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy exceeds $50,000. *Id.* at 404.

■ In the case at bar, the district judge was satisfied that the defendant had shown by a preponderance of evidence that the amount in controversy satisfied the jurisdictional requirement. Unlike *Gaus,* there were facts to show that it did. The court considered a formal judicial admission made in open court by the plaintiff's attorney, that the amount in controversy exceeds $50,000. A trial judge has discretion whether to accept a judicial admission. *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 227 (9th Cir.1988); 9 Wigmore on Evidence § 2590. The district judge in this case reasonably exercised his discretion to accept the admission.

■ This is not to say that a defect in jurisdiction can be avoided by waiver or stipulation to submit to federal jurisdiction. It cannot. *Cripps v. Life Ins. Co. of North America,* 980 F.2d 1261, 1264 (9th Cir.1992). But a judicial admission of a fact is not the same thing as a waiver or a stipulation. Where the plaintiff filed the case in state court, and did not seek the federal forum, then the plaintiff's formal judicial admission that the amount in controversy exceeds $50,-000 has the effect of defeating the plaintiff's choice of forum. In this context, where state law prohibited plaintiff from stating the amount in controversy in the complaint, the district judge has discretion to accept the admission as establishing it. Otherwise we would be adopting the illogical position that a plaintiff can establish the amount in controversy by an ad damnum, but not by a formal admission against the plaintiff's interest in choice of forum. The plaintiff, after all, creates the controversy and is the master of the claim, and decides how much money to de-

mand. 14A Wright, Miller & Cooper § 3702 at 22.

The Fifth Circuit has described an appropriate procedure for determining the amount in controversy on removal. *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326 (5th Cir.1995). The district court may consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy. If not, the court may consider facts in the removal petition, and may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* at 1335–36. The Fifth Circuit agrees with our conclusion in *Gaus* that removal "cannot be based simply upon conclusory allegations" where the ad damnum is silent. *Id.* at 1335. We agree with the Fifth Circuit.

The district court's exercise of discretion to accept the admission as evidence was supported by the plausibility of the admission, which was facially apparent from the complaint. The complaint alleges in Count I that State Farm breached a contract to pay $30,-000. Count II alleges that State Farm breached its implied covenant of good faith and fair dealing, by refusing to settle for the $30,000 until the eve of arbitration, even though State Farm knew it owed Mr. Singer that amount, causing tort damages in addition to the $30,000, and entitling Mr. Singer to punitive damages. In the absence of any conflicting evidence, the plaintiff's admission established by a preponderance that the amount in controversy exceeded $50,000. The district court's determination that it had jurisdiction is therefore affirmed.

**2. The Bad Faith Claim.**

■ Because the district court granted judgment on the pleadings, we read the pleadings to determine whether, if the plaintiff proved what he pleaded, the defendant would nevertheless be entitled to judgment as a matter of law. *Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co., Inc.,* 50 F.3d 1486, 1488 (9th Cir.1995). Mr. Singer pleads that he was a State Farm insured with uninsured motorist coverage up to $30,-000 in his policy. State Farm knew full well that it owed him the money, yet with no reasonable basis for a contest purposely delayed tendering the policy limits until the eve of arbitration:

18. Defendants have breached the obligation of good faith and fair dealing by engaging in a course of conduct to further their own economic interests and in violation of their contractual and legal obligations to Plaintiff, including, but not limited to:

a. Unreasonable and improper investigation and handling of the uninsured motorist claim;

b. Unreasonable delays in acting upon Plaintiff's claim;

c. In the absence of a reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, failure and refusal to timely pay benefits due under the Policy to Plaintiff.

d. Offering to settle Plaintiff's claim for less than the policy limits, with full knowledge and conscious disregard of the fact that liability was clear and Plaintiff's damages exceeded the uninsured motorist policy limits and that the case would be forced into arbitration;

e. Failing and refusing to tender the policy limits to Plaintiff until the eve of the arbitration;

f. Other wrongful and illegal conduct, to be established at the time of trial.

State Farm argues that there can be no bad faith claim until there has been an adjudication or arbitration award establishing negligence. Thus, because there was no judgment or award that Mr. Singer's car accident was the uninsured driver's fault, State Farm argues that Mr. Singer cannot recover anything from it even if he can prove State Farm refused to pay him money to which they knew he could prove entitlement.

■ State Farm's reading of California law is incorrect. The principle on which State Farm relies is that where an injured person makes a claim against an insured, the insured's liability carrier cannot be liable for bad faith to the third party unless the insured's liability to the third party has first been established by adjudication. *Moradi–Shalal v. Fireman's Fund Ins. Co.,* 46 Cal.3d

287, 250 Cal.Rptr. 116, 758 P.2d 58 (1988). "This predetermination rule precludes a claimant who has settled his underlying claim against the insurer from subsequently suing an insurer for damages for statutory bad faith committed in the process of reaching the settlement." *Id.* at 310, 250 Cal.Rptr. at 131, 758 P.2d at 73. That is because the insurer's duty to settle generally is owed to its policyholder, not to the person suing its policyholder. This principle does not apply to an insured's claim against its own insurer for uninsured motorist coverage. Where the owner of an uninsured motorist policy makes a claim for which liability of the uninsured motorist is clear and damages plainly exceed the uninsured motorist coverage policy limits, and the insurer unreasonably refuses to pay, then the insurer is liable for tort damages under California law for breach of its implied covenant of good faith and fair dealing, without arbitration. *Hightower v. Farmers Ins. Exchange*, 38 Cal.App.4th 853, 45 Cal. Rptr.2d 348, 353–54 (1995). The uninsured motorist claim differs from the third party claim in that the insurer owes its insured a duty of good faith and fair dealing, and also because it is impractical for the policyholder to sue the third party.

State Farm relies on language in an earlier case from the same California court, *Interinsurance Exchange v. Superior Court*, 213 Cal.App.3d 1439, 262 Cal.Rptr. 392 (1989). *Interinsurance Exchange* is distinguishable from *Hightower*, because it relates to the passenger's third party claims against the driver where the driver had collided with an uninsured motorist. *Interinsurance Exchange* applies *Moradi–Shalal*. *Interinsurance Exchange*, 262 Cal.Rptr. at 393–94. To the extent that *Interinsurance Exchange* may be read to conflict with *Hightower*, we conclude that *Hightower* is more probably the correct statement of California law. *See Chemstar, Inc. v. Liberty Mut. Ins. Co.*, 41 F.3d 429, 432 (9th Cir.1994) (Ninth Circuit not bound by California appellate court decisions if it believes that the California Supreme Court would decide otherwise); *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1036 n. 5 (9th Cir.1994) (appellate court decision is "datum for ascertaining state law" and should not be disregarded by Ninth Circuit

unless convinced by "other persuasive data" that state Supreme Court would decide differently).

▉ State Farm also argues that California Insurance Code § 11580.2 requires that the uninsured motorist coverage must be settled by arbitration before the insurer can be liable to its own insured for bad faith. We disagree with that reading. The statute says that uninsured motorist coverage must provide that the determination of the amount "shall be made by agreement ... or, in the event of disagreement, by arbitration":

. (f) The policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration.

Cal.Ins.Code § 11580.2(f). This provision does not speak to the question of whether an insurance company could be acting in bad faith by insisting on arbitration when there was no reason not to reach agreement.

Ordinarily a policyholder with uninsured motorist coverage would have no reason to sue the uninsured motorist before settling with its insurer. The reason for buying the insurance is to put a financially responsible company in place of the usually irresponsible uninsured driver. Typically if such an action is pursued at all, it is pursued by the insurance company subrogated to its insured's rights. Standard boilerplate in an uninsured motorist policy says that a judgment against the third-party is not conclusive of the insurer's liability to the insured, unless the action is prosecuted "with the written consent of the company." 2 Alan I. Widiss, Uninsured and Underinsured Motorist Insurance, § 28.8 (2d ed. 1992 & Supp.1996) (citing 1966 Standard Form Part I); *see also* Insurance Services Office, Inc., Personal Auto Policy, PP 00 01 12 89. Part C.A (reproduced in Widiss, *supra* at App. A(1)).

Accordingly, dismissal of Mr. Singer's claim on the pleadings was incorrect.

## III.   CONCLUSION

We AFFIRM the district court's determination that it had subject matter jurisdiction. We REVERSE the dismissal on the pleadings.