IKUTA, Circuit Judge,
dissenting:
Gambling, it is said, is a “sure way of getting nothing from something.” Here, by contrast, two professional gamblers get something from nothing. Although their complaint contains nothing that would provide a basis for asserting personal jurisdiction over the federal agent who allegedly violated their Fourth Amendment rights, the majority finds “something” in the complaint: specifically, the “false affidavii/forfeiture proceeding aspect” of their case. Maj. op. at 847 (emphasis added). This “aspect,” the majority determines, provides a basis for personal jurisdiction over the federal agent, even though it is neither a constitutional tort nor a state law claim, and even though plaintiffs never argued that it was. And the gamblers’ lucky streak does not end there: the majority then reverses the district court for failing to discern this elusive “aspect” and to apply the entirely discretionary (and rarely invoked) doctrine of “pendent personal jurisdiction.” In fact, the district court correctly determined that the complaint did not make a prima facie showing that the federal agent purposefully directed his actions to the forum state. Because the district court did not err in dismissing the complaint for want of personal jurisdiction, I dissent.
I
The complaint in this ease relates the following tale. Gina Fiore and Keith Gipson are professional gamblers. On their return from a gambling trip to San Juan, Puerto Rico, their “traveling bank” [1] and winnings had grown to over $97,000, which they divided between their carry-on bags and their pockets. At the San Juan airport, TSA agents searched Gipson’s bag and found about $50,000. The agents also discovered about $30,000 in Fiore’s carry-on. Upon spotting such large sums of cash, the TSA agent called a supervisor, who contacted DEA agent Michael Cuento and two others.
Fiore told Cuento that she and Gipson had departed from the El San Juan Casino, where they had been gambling. Fiore and Gipson showed Cuento valid California driver’s licenses, volunteered that they had Nevada and California residences, and indicated that they were returning to their residences in Las Vegas. Cuento escorted them onto the plane, but he told them they should not be surprised if they were asked further questions.
Fiore and Gipson landed in Atlanta and proceeded to their gate for their connecting flight to Las Vegas. There, they met agent Walden and another DEA agent who called for a drug-sniffing dog. Fiore and *861 Gipson were (falsely, they say) informed that the dog had alerted. Agent Walden seized their cash, but assured them that if they produced receipts demonstrating that the funds were legitimate, their money would be returned. With that assurance, plaintiffs boarded their plane to Las Vegas. From the fact that their checked bags did not make it to Las Vegas with the plane, the disheveled state of the items inside, and the absence of a TSA sticker, plaintiffs surmised that the DEA, with the participation of agent Walden, conducted a search of their checked baggage.
Upon their return, Fiore and Gipson forwarded to Walden tax returns, receipts from their trip, their travel itinerary, and hotel records showing that they had gambled enough to have rooms “comped.” They explained that Gipson had played under a legal alias he commonly used in gaming. They also sent a “win record” on El San Juan letterhead. Despite, as plaintiffs allege, “necessarily recognizing] that the seized funds were not related to any illicit drug trade and were not contraband or the proceeds of contraband,” Walden did not return their funds. Not only that, but they allege “on information and belief’ that Walden, along with two unnamed defendants, worked “to provide a false probable cause affidavit, known by each to be false, for forwarding to the U.S. attorney in Georgia to prosecute a forfeiture action,” an affidavit that Fiore and Gipson contend omitted exculpatory information.
Even though Walden necessarily recognized the funds’ legitimacy, plaintiffs allege, he did not return the funds and referred the matter for prosecution because he “personally disapproved” of the strategies plaintiffs used in gambling.[2] The AUSA to whom the matter was referred ultimately ordered the funds returned some six months later for lack of probable cause.
If plausible, this story might support Fiore and Gipson’s claim that Walden seized their traveling bank in violation of their Fourth Amendment rights. But there is one problem: Fiore and Gipson filed the complaint against Walden in a district court in Nevada, but failed to allege that Walden had any contacts with that state for purposes of personal jurisdiction. See Int’l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (personal jurisdiction cannot constitutionally be asserted unless defendant has “certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice’ ” (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940))). Notably absent from plaintiffs’ complaint is any allegation:
• that plaintiffs told Walden of their Las Vegas residences;
• that Cuento ever spoke with Walden;
• that Cuento told Walden of plaintiffs’ connection to Las Vegas;
• that plaintiffs showed Walden any Nevada-issued identification (in fact, Agent Walden’s uncontested declaration confirms that Fiore and Gipson showed him California, not Nevada, licenses);
Indeed, the complaint does not expressly allege that even after the seizure, Walden became aware that plaintiffs’ residence was in Nevada; it alleges only that plaintiffs forwarded their tax returns, trip receipts, and the like to Walden “from Las Vegas.” And Walden’s uncontested declaration makes clear that he never contacted *862 plaintiffs’ attorney “or anyone else in Nevada,” and has never lived in, been to, owned property or conducted any business in Nevada.
Given these facts, and applying the applicable precedent, see Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004), the district court concluded that Walden’s search of plaintiffs’ luggage and seizure of the money “was expressly aimed at Georgia, not Nevada”: the search occurred in Georgia, as did the questioning and the seizure. It therefore dismissed plaintiffs’ action for want of personal jurisdiction. As explained below, the district court’s thorough and well-reasoned decision was clearly correct.
II
For a court to have specific personal jurisdiction over a defendant in a tort suit, (1) the defendant must have purposefully directed specific activities toward the state forum, (2) the plaintiffs claim must arise out of or relate to those specific forum-related activities, and (3) the exercise of jurisdiction must comport with “fair play and substantial justice.” Schwarzenegger, 374 F.3d at 802; Fed R. Civ. P. 4(k)(l)(A). In other words, in order for the district court to have asserted personal jurisdiction over Walden, it would have had to conclude that Walden purposefully directed the actions that form the basis of plaintiffs’ claim to Nevada.
In determining whether the defendant “purposefully directed” the activities which are the subject of plaintiffs claim to the forum state, we consider whether the defendant “(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.” Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir.2002) (citing Calder v. Jones, 465 U.S. at 788-89, 104 S.Ct. 1482). As a matter of simple logic, a defendant cannot “expressly aim” an intentional act at a victim’s home state if the defendant committing the action does not even know that the victim has any connection with that state. See Bancroft & Masters, Inc. v. Augusta Nat’l Inc., 223 F.3d 1082, 1087 (9th Cir.2000) (“From the available cases, we deduce that the [‘express aiming’] requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.”); cf. Ibrahim v. Dep’t of Homeland Sec., 538 F.3d 1250, 1258 (9th Cir.2008) (approving the exercise of personal jurisdiction in California where defendant, a Virginia resident with no other ties to California, ordered local police to prevent plaintiff from flying out of the San Francisco airport and to detain her for further questioning).
This framework creates a problem for Fiore and Gipson: when Walden seized the cash, he knew only that the plaintiffs had California driver’s licenses and were headed to Las Vegas. The complaint does not even hint that Walden learned of plaintiffs’ ties to Las Vegas until after the seizure was complete. Because there is no allegation that Walden purposefully directed the actions that form the basis of plaintiffs’ claim to Nevada, a Nevada district court necessarily lacks personal jurisdiction over Walden. That should be the end of the matter.[3]
Ill
But it is not, because the majority shows more creativity construing the complaint than Fiore and Gipson did drafting it. *863 That is, the plaintiffs allege one simple claim: a violation of their Fourth Amendment rights to be free of unreasonable searches and seizures. The gravamen of Fiore and Gipson’s complaint is that “[t]he search and withholding of [their] checked baggage ... was without probable cause, unreasonable, and also constituted an illegal search and seizure, by the defendants.” Or, as they later put it, “Defendants’ actions constitute a violation of U.S. Const. Amd. IV in the unreasonable seizure and unreasonable continued seizure of the plaintiffs funds.”
The majority, however, purports to flush out a second claim roosting amidst the lines of the complaint. According to the majority, there is a “false affidavit/forfeiture proceeding aspect of [the] case,” maj. op. at 848, which gives rise to “an allegation that Walden attempted to defraud Fiore and Gipson of the seized funds,” maj. op. at 853 (emphasis added). Because, the majority explains, at the time Walden prepared the false probable cause affidavit, he knew plaintiffs had significant connections with Nevada, the district court erred in not asserting personal jurisdiction over Walden based on this false affidavit “aspect” of the case. Maj. op. at 853-54.
The majority’s analysis completely misses the mark for a crucial reason: the complaint did not include a fraud claim. We analyze personal jurisdiction on a claim-by-claim basis. See, e.g., College-Source, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1076-77 (9th Cir.2011) (focusing the jurisdictional inquiry on plaintiffs state law misappropriation claim); see also Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir.2001) (stating that a district court’s specific personal jurisdiction “is claim specific,” meaning that personal jurisdiction over one defendant as to a particular claim does not necessarily give the court personal jurisdiction over that same defendant as to the plaintiffs other claims). The only claim in this complaint is a Fourth Amendment claim for seizure of property. There is no claim that Walden’s preparation of the allegedly fraudulent affidavit violated plaintiffs’ Fourth Amendment rights,[4] and it is doubtful that such a constitutional tort even exists.
Nor did the plaintiffs bring a state fraud claim. In fact, the plaintiffs do not appear to bring any state claim at all: they claimed federal jurisdiction based on the general federal question statute (28 U.S.C. § 1331) and 28 U.S.C. § 1356,[5] and do not invoke diversity jurisdiction. For that matter, the complaiiit does not allege over $75,000 in .controversy as required for diversity jurisdiction, see 28 U.S.C. § 1332(a), or facts from which it is “facially apparent” that the “jurisdictional amount is in controversy,” Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir.1997) (internal quotation omitted). Nor does the complaint invoke supplemental jurisdiction.
Indeed, it is doubtful that the elements of a state law fraud cause of action are even lurking in the complaint. Under Nevada law, the elements of a fraud cause of action are (1) a false representation by defendant; (2) defendant’s knowledge or *864 belief that the representation was false; (3) defendant’s intent that plaintiff act or refrain from acting in reliance upon the misrepresentation; (4) plaintiffs justifiable reliance upon it; and (5) damage to plaintiff as a result. Rivera v. Philip Morris, Inc., 395 F.3d 1142, 1155 (9th Cir.2005). The complaint does not, however, allege that Walden intended plaintiffs to act or refrain from acting in reliance on the false affidavit, or that plaintiffs justifiably relied on the affidavit.
In any event, an unarticulated state law claim could not give the majority a basis for reversing the district court. When the district court, which had original jurisdiction only over the Fourth Amendment claim, dismissed that claim for lack of personal jurisdiction, it was well within its discretion to decline to exercise supplemental jurisdiction over any implicitly lurking state law claim. See 28 U.S.C. § 1367(c)(3); Bryant v. Adventist Health Sys./W., 289 F.3d 1162, 1165 (9th Cir.2002) (district court’s decision to decline supplemental jurisdiction reviewed for abuse of discretion).
Because plaintiffs based their claim on Walden’s seizure of the cash (which not even the majority contends was purposefully directed toward Nevada) and did not, as the majority suggests, allege a fraud claim, it is impossible to say that plaintiffs’ claim arose out of or related to Walden’s conduct in preparing the allegedly false probable cause affidavit. See Schwarzenegger, 374 F.3d at 802.
IV
The majority’s reasoning threatens a substantial expansion of the scope of personal jurisdiction. If a district court commits reversible error by failing to give due weight to the “false affidavit/forfeiture proceeding 'aspect ” of a complaint, maj. op. at 848 (emphasis added), even where the parties never asked the court to do so, district courts must scour complaints to find some allegation of wrongful action that might have occurred after the defendant became aware of the plaintiffs residence. Such a ruling essentially requires courts to assert personal jurisdiction over any defendant who learns about the home state of the plaintiff at any time after the defendant engaged in the conduct that formed the basis of plaintiffs claim. To ensure this result, plaintiffs need only assert that the defendant knew their home state and subsequently engaged in some wrongful act.
Obviously, this loosens the due process protection afforded defendants beyond anything allowed by the Supreme Court, which recently reemphasized that personal jurisdiction is not an outmoded legal fiction, but remains a vital part of due process and fair play. See J. McIntyre Machinery, Ltd. v. Nicastro, — U.S. -, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011) (striking down the New Jersey Supreme Court’s broad ruling that a state court had personal jurisdiction over a company despite the defendant’s lack of minimum contacts with the state.) As the plurality noted, “[flreeform notions of fundamental fairness divorced from traditional practice” do not give a state lawful judicial authority over a defendant, id. at 2787; see also id. at 2791 (Breyer, J., concurring in the judgment) (rejecting the state court’s adoption of “a broad understanding of the scope of personal jurisdiction based on its view that ‘[tjhe increasingly fast-paced globalization of the world economy has removed national borders as barriers to trade’ ”) (alteration in original) (quoting Nicastro v. McIntyre Machinery America, Ltd., 201 N.J. 48, 987 A.2d 575, 577 (2010)).
The majority’s decision today unwisely broadens the scope of personal jurisdiction, erroneously rejects the district court’s adherence to “traditional practice” *865 in favor of its own “[f]reefonn notions” of fairness, id. at 2787 (plurality opinion), and holds that Walden is subject to the jurisdiction of a Nevada court despite his having no contacts whatsoever to that state in connection with plaintiffs’ Fourth Amendment claim. Because “those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter,” id., I dissent.

. A "traveling bank” is a significant amount of currency (here, tens of thousands of dollars) carried by professional gamblers to cover traveling expenses and give them a cushion if they suffer losses.

. Walden's uncontested declaration, by contrast, states that he lacked any authority over the seized cash once it had been transferred to a secure location for processing and storage.

. Indeed, the majority concedes that the complaint does not allege that Walden knew of plaintiffs' Nevada residency when he seized the $97,000. See maj. op. at 850-51.

. One combs through the complaint in vain to find any argument that the creation of a false probable cause affidavit is a separate constitutional tort. Rather, the plaintiffs point to the false affidavit to support their Fourth Amendment claim, stating that "[t]he law is clearly established that falsifying evidence on an affidavit in support of a seizure or a search renders the seizure or search unconstitutional.”

. 28 U.S.C. § 1356 provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of any seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction____"