Filed 7/22/14 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| TED MASLO, | B249271 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC097118) |
| v. | |
| AMERIPRISE AUTO & HOME INSURANCE, | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| Defendant and Respondent. | |

THE COURT:*

It is ordered that the opinion filed June 27, 2014, be modified as follows:

On page 13, first paragraph, line 3, the text "Appellant's reliance" should be replaced with "The Insurer's reliance."

There is no change in the judgment.

_____

\*EPSTEIN, P. J.               MANELLA, J.               \*\*EDMON, J.

_____

\*\*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 6/27/14 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TED MASLO, | B249271 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC097118) |
| v. | |
| AMERIPRISE AUTO & HOME INSURANCE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James A. Kaddo, Judge. Reversed, and remanded with directions.

Law Offices of Steven B. Simon and Lawrence P. Perle for Plaintiff and Appellant.

Woolls & Peer and H. Douglas Galt for Defendant and Respondent.

_____

# INTRODUCTION

Appellant Ted Maslo was the insured on an automobile insurance policy issued by respondent Ameriprise Auto and Home Insurance (insurer).[1] After sustaining bodily injuries as a result of an accident caused by an uninsured motorist, Maslo filed a claim seeking the $250,000 limit on the policy's uninsured motorist coverage. In response, the insurer demanded arbitration. After being awarded $164,120.91 by the arbitrator, Maslo filed a second amended complaint (SAC) against the insurer. The SAC alleged that the insurer breached the implied covenant of good faith and fair dealing by forcing the insured to arbitrate his claim without fairly investigating, evaluating and attempting to resolve it. The trial court sustained the insurer's demurrer to the SAC and dismissed the complaint. This appeal followed.

We conclude that the complaint adequately stated a claim for bad faith when it alleged that the insurer, presented with evidence of a valid claim, failed to investigate or evaluate the claim, insisting instead that its insured proceed to arbitration. We reject the insurer's argument that its right to resolve a disputed claim through arbitration relieves it of its statutory and common law duties to fairly investigate, evaluate and process the claim. We further reject the suggestion that in the absence of a genuine dispute arising from an investigation and evaluation of the insured's claim, the insurer may escape liability for bad faith simply because the amount ultimately awarded in arbitration was less than the policy limits or the

---

[1]     Respondent contends the proper defendant is IDS Property Casualty Insurance Company (IDS), although Ameriprise Financial, Inc. is admittedly the indirect parent of IDS. To avoid confusion, we will refer to the defendant insurance company as "insurer." On remand, if appropriate, appellant may amend his complaint to substitute IDS as the named defendant.

2

insured's initial demand.  Finally, we conclude that the complaint adequately alleged causation where, as pled, the conduct of the insurer made arbitration inevitable and settlement impossible.  Accordingly, we reverse the trial court's judgment of dismissal following its order sustaining the demurrer.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 9, 2012, appellant filed a first amended complaint (FAC) for damages against his insurer, alleging one cause of action for breach of the covenant of good faith and fair dealing.  According to the FAC, appellant was an insured on an automobile insurance contract that provided up to $250,000 in coverage for injuries and damages resulting from the negligence of an uninsured motorist.  During the policy term, an uninsured motorist struck appellant's vehicle from the rear, forcing it to collide with a third vehicle.  The FAC alleged that "[a]t no time did [appellant] contribute any fault or negligence concerning said accident."  The FAC further alleged that on or about September 3, 2008, the accident was investigated by the Los Angeles Police Department (LAPD), which prepared a traffic collision report.  The report concluded the uninsured motorist was the sole cause of the accident.

As a result of the accident, appellant suffered numerous bodily injuries, including a severe injury to his shoulder.  Appellant was referred to an orthopedic surgeon, and an MRI revealed an "internal derangement of the left shoulder; a SLAP lesion of the left shoulder; a split tear of the superior rotator cuff; and downsloping of the acromion and impingement syndrome."  Appellant underwent two surgeries to repair his shoulder.

The FAC further alleged that appellant reported the accident to his insurer on September 3, 2008, and provided a statement about the accident the following day.  The insurer also received a copy of the LAPD traffic collision report.  On

3

August 13, 2009, appellant supplied his insurer with copies of all his medical records and billing statements regarding his treatment. In that letter, appellant sought settlement of the uninsured motorist claim in the amount of the policy limit of $250,000. The insurer did not respond to the settlement demand.

On January 22, 2010, appellant renewed his demand and requested a response. On February 2, the insurer asked for an extension of time to respond, which appellant granted. On February 26, the insurer retained counsel for an arbitration proceeding on appellant's uninsured motorist claim. The FAC alleged that although appellant had offered to mediate his claim, the insurer "refused to participate in the Mediation process, refused to make any offer of settlement to Plaintiff, and refused to respond to Plaintiff's policy limits demand."

From February 26, 2010 through November 2, 2011 (the date of the arbitration), the parties engaged in discovery for the arbitration proceeding. The FAC alleged that appellant's discovery responses provided the insurer with "all documents concerning liability and damages that [the insurer] needed to fully and fairly evaluate the case." The FAC further alleged that "[a]t no time prior to the Arbitration hearing did [the insurer] schedule the depositions of Plaintiff's treating physicians or interview them." Nor did the insurer "request a defense medical examination, conduct a defense medical examination, or obtain a defense medical record review."

The FAC alleged that the insurer's failure and refusal to make any offer of settlement was contrary to Insurance Code section 790.03, subdivision (h)(5), which provides that it is an unfair claim settlement practice not to "'attempt[] in good faith to effectuate a prompt, fair, and equitable settlements of claims in which

4

liability has become reasonably clear.'"[2] The FAC further alleged that liability was reasonably clear as of the date of the accident, and that the insurer failed to comply with the Insurance Code when it made no offer of settlement.

The parties stipulated that appellant's medical expenses totaled $64,120.91. At the conclusion of the arbitration, the arbitrator awarded appellant that amount in medical damages and $100,000 in general damages, for a total award of $164,120.91.

The FAC alleged that the insurer had "a duty of good faith and fair dealing[] to properly and fairly investigate and handle Plaintiff's claim and to enter into a prompt[,] fair and equitable settlement with Plaintiff." The FAC further alleged that the insurer breached this duty by, among other acts, "fail[ing] to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim for uninsured motorist bodily injury in which liability had become reasonably clear." The insurer made no offer of settlement prior to the arbitration, which was more than three years after the accident and more than two years after the insurer had all appropriate medical documentation in its possession. The FAC further alleged that as a result of the insurer's failure, "Plaintiff was forced to go to Arbitration and to incur costs in excess of $25,000 as well as additional attorney fees."

Finally, the FAC prayed for compensatory and consequential damages for the delay and withholding of benefits under the uninsured motorist provisions of the automobile insurance policy, for reimbursement of all costs and attorney fees, for general damages, for punitive damages, for all costs of the lawsuit, and for interest on all sums.

---

[2] All further statutory citations are to the Insurance Code, unless otherwise stated.

5

The insurer filed a demurrer to the FAC. It argued that the complaint failed to state a cause of action for breach of the covenant of good faith and fair dealing, as allegations in the complaint established the existence of a "genuine dispute" over the amount of payment due under the insurance policy. Relying on an insurance law treatise, the insurer argued that the elements of an insurance "bad faith" claim are: (1) that the insured made a claim for which liability was clear, (2) that damages plainly exceeded the uninsured motorist coverage limits, and (3) that the insurer unreasonably refused to pay. As the damages in the instant case did not plainly exceed $250,000, the insurer argued that the superior court should sustain the demurrer. In the alternative, the insurer argued that the complaint failed to adequately allege causation. According to the insurer, "it was not [the insurer's] failure to make a settlement offer that resulted in the need for arbitration; rather, it was [appellant's] overvaluation of his claim that was the cause of the delay in resolution of his claim."

On November 29, 2012, the superior court sustained the demurrer with leave to amend. The court ruled that appellant had properly set forth the duty and breach elements of the bad faith claim by alleging that the insurer did not attempt in good faith to effectuate prompt, fair and equitable settlement of a claim in which liability had become reasonably clear. The court found that "the genuine di[sp]ute rule does not cut-off [*sic*] liability under the facts alleged." However, the court determined that causation was not supported by sufficient factual allegations.

On December 13, 2012, appellant filed his SAC. It mirrored the FAC, but contained additional factual allegations detailing the specific costs appellant incurred as a result of being compelled to arbitrate a claim the insurer had made no attempt to settle. The insurer filed a demurrer to the SAC, repeating the same argument regarding causation and relying upon the same legal authorities. The

6

insurer further contended that causation on an insurance "bad faith" claim could be shown only where the arbitrator determined that the claim was worth more than the initial demand made by the insured.

After another hearing, the trial court issued an order sustaining the demurrer without leave to amend. The court found that appellant could not allege causation, as the facts did not show that appellant's damages "plainly exceed[ed] the unin[su]red motorist coverage policy limits." A judgment dismissing the SAC was entered March 26, 2013. Appellant timely noticed an appeal.

## DISCUSSION

A. *Standard of Review*

"In reviewing an order sustaining a demurrer, we assume well-pleaded factual allegations to be true and examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action on any legal theory. [Citation.]" (*Kyablue v. Watkins* (2012) 210 Cal.App.4th 1288, 1292.) To the extent our analysis requires interpretation of certain provisions of the Insurance Code, we apply a de novo review. (*Honig v. San Francisco Planning Dept*. (2005) 127 Cal.App.4th 520, 524.)

B. *Breach of the Covenant of Good Faith and Fair Dealing*

Appellant contends his SAC alleged facts sufficient to state a cause of action for breach of the covenant of good faith and fair dealing against his insurer. We agree.

"The law implies in every contract, including insurance policies, a covenant of good faith and fair dealing. 'The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits. To fulfill its implied obligation, an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests.

7

When the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort.'" (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 (*Wilson*), quoting *Frommoethelydo v. Fire Ins. Exchange* (1986) 42 Cal.3d 208, 214-215 (*Frommoethelydo*).) Thus, "[a]n insurer's obligations under the implied covenant of good faith and fair dealing with respect to first party coverage include a duty not to unreasonably withhold benefits due under the policy. [Citation.] An insurer that unreasonably delays, or fails to pay, benefits due under the policy may be held liable in tort for breach of the implied covenant. [Citation.]" (*Rappaport-Scott v. Interinsurance Exchange of the Automobile Club* (2007) 146 Cal.App.4th 831, 837 (*Rappaport-Scott*).)

Moreover, "[w]hile an insurance company has no obligation under the implied covenant of good faith and fair dealing to pay every claim its insured makes, the insurer cannot deny the claim 'without fully investigating the grounds for its denial.'" (*Wilson*, *supra*, 42 Cal.4th at pp. 720-721, quoting *Frommoethelydo*, *supra*, 42 Cal.3d at p. 215.) "By the same token, denial of a claim on a basis unfounded in the facts known to the insurer, or contradicted by those facts, may be deemed unreasonable. 'A trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim. The insurer may not just focus on those facts which justify denial of the claim.'" (*Wilson*, at p. 721, quoting *Mariscal v. Old Republic Life Ins. Co.* (1996) 42 Cal.App.4th 1617, 1623.) "An insurer's good or bad faith must be evaluated in light of the totality of the circumstances surrounding its actions." (*Id.* at p. 723.)

Applying these principles, we conclude the SAC stated an insurance bad faith cause of action. Appellant alleged (1) that the insurer was apprised that appellant, its insured, had suffered bodily injuries resulting from the negligence of an uninsured motorist; (2) that the insurer knew the LAPD traffic collision report

8

had concluded the uninsured motorist was solely at fault; (3) that appellant made a demand for payment of the $250,000 policy limit on his uninsured motorist coverage; (4) that appellant submitted his medical records and billing statements; (5) that the insurer rejected the demand without an adequate investigation, as the insurer failed, among other things, to conduct a defense medical examination or interview appellant's treating physicians; (6) that despite clear evidence of liability, the insurer made no offer of settlement; (7) that the insurer agreed to pay the claim only after the arbitration, which was more than three years after the accident and more than two years after the insurer had all appropriate medical documentation in its possession; and (8) that as a result of the insurer's refusal to investigate and evaluate his claim, appellant was compelled to incur the costs of an arbitration necessitated solely by the insurer's intransigence. Under this factual scenario, a reasonable jury could find the insurer liable for breach of the covenant of good faith and fair dealing. (See *Wilson*, *supra*, 42 Cal.4th at pp. 721, 723 [affirming denial of summary judgment of an insurance bad faith claim and finding triable issues of fact on reasonableness of insurer's denial of claim where (1) insured complained of neck pain after accident and in subsequent weeks and months, (2) insured's treating physician concluded the pain was a result of the accident, (3) an MRI corroborated the medical conclusion, and (4) insurer's claims examiner rejected conclusion without any medical basis for doing so].)[3]

---

[3] The insurer argues that appellant sought to impose a "duty to settle" upon it. While an insurer has no duty to settle every claim asserted by an insured, it does have a duty to investigate a submitted claim and to attempt in good faith to effectuate a prompt and equitable settlement of a claim for which liability has become reasonably clear (see § 790.03, subd. (h)(5)). This would include investigating the claim, negotiating in good faith and, in the appropriate situation, paying or denying the claim. While the SAC suggested that the insurer should have settled the claim, the gravamen of the complaint was not that the insurer

9

The insurer advances four arguments in support of its claim that appellant has not -- and cannot -- state an insurance bad faith cause of action. First, relying on out-of-state authority, it contends an insurer does not have the same duty to act in good faith in the uninsured motorist context as it does in other insurance contexts. Second, it contends it cannot be liable for failing to attempt to settle appellant's claim, as the complaint demonstrated the existence of a "genuine dispute" over the amount of the claim. Third, it contends appellant cannot show bad faith, as the complaint failed to allege either that the insured's pre-arbitration damages plainly exceeded the policy limits or that the amount of damages awarded by the arbitrator exceeded the settlement demand. Finally, it contends appellant cannot show that the insurer caused him to incur the costs of arbitration, as he failed specifically to allege that he would have accepted an offer to settle for an amount less than $250,000. We reject all four arguments.

1.     *Insurer's Duty to Insured in the Uninsured Motorist Context*

In support of its first argument, the insurer relies on the Utah case of *Lyon v. Hartford Accident and Indem. Co.* (Utah 1971) 480 P.2d 739 (*Lyon*). That case's holding, however, is contrary to binding California case authority. (See *Beck v. Farmers Ins. Exch.* (Utah 1985) 701 P.2d 795, 799 (*Beck*).)[4] As discussed above,

---

failed to finalize a settlement with appellant, but that it failed to adequately investigate and evaluate his claim on the policy, and failed to attempt to negotiate a settlement, despite clear evidence of liability.

[4]     In *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, the California Supreme Court held that an insured may bring a tort action against an insurer who fails to bargain in good faith in a "first-party" situation, that is, a situation where the insurer agrees to pay claims submitted to it by its insured for losses suffered by the insured. It is undisputed that the instant case is a first-party insurance action.

In *Beck*, the Utah Supreme Court noted that this was not the law in Utah. It cited *Lyon*, in which that same court had held that in the "third-party" situation --

10

in California, "[t]o fulfill its implied obligation [of good faith and fair dealing], an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests." (*Wilson*, *supra*, 42 Cal.4th at p. 720 [applying principle to first-party bad faith action].) Moreover, under section 790.03, subdivision (h)(5) of California's Insurance Code, it is an unfair claim settlement practice not to "attempt[] in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." That statutory provision applies to "all . . . persons engaged in the business of insurance." (See § 790.01.) Thus, in California, an insurer has the same duty to act in good faith in the uninsured motorist context as it does in any other insurance context.

2.       *The "Genuine Dispute" Rule*

The insurer next contends that on the facts alleged in the SAC, it may avoid liability for an insurance bad faith claim under the "genuine dispute" rule. The "genuine dispute" rule is "a close corollary" to the principle that "an insurer's denial of or delay in paying benefits gives rise to tort damages only if the insured shows the denial or delay was unreasonable." (*Wilson*, *supra*, 42 Cal.4th at p. 723.) Under the rule, "'an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract.'" (*Ibid*., quoting *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.*

where the insurer contracts to defend the insured against claims made by third parties against the insured -- the insurer must act in good faith and be as zealous in protecting the interests of the insured as it would be in regard to its own, but that in the "first-party" situation, the insurer had no such duty. (See *Lyon*, 480 P.2d at p. 745.)

11

(2001) 90 Cal.App.4th 335, 347; accord *Rappaport-Scott*, *supra*, 146 Cal.App.4th at p.837 [same].) Pointing to the fact that appellant's initial demand was $250,000 and the arbitrator ultimately awarded roughly $164,000, the insurer contends that a genuine dispute necessarily existed. We disagree.

"The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A *genuine* dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." (*Wilson*, *supra*, 42 Cal.4th at p. 723.) Here, the insurer cannot rely upon the genuine dispute rule, as the SAC alleged that the insurer failed to comply with its common law and statutory obligations to thoroughly and fairly investigate, process, and evaluate appellant's claim. Specifically, the SAC alleged that the insurer was promptly apprised of the claim, provided with the LAPD traffic collision report showing the uninsured motorist was solely responsible for the accident, and provided with medical documentation of the injuries sustained by appellant and the nature and cost of his medical treatment. The SAC further alleged that the insurer neither interviewed appellant's treating physicians, nor conducted its own medical examination or review. The SAC alleged that despite being provided with "all documents concerning liability and damages . . . needed to fully and fairly evaluate the case," the insurer failed to promptly and properly investigate and handle appellant's claim. Specifically, it failed to respond in good faith to appellant's settlement demand, made no settlement offer, failed to provide a reason for withholding payment, refused appellant's offer to participate in mediation, and provided appellant no opportunity to negotiate a settlement. Our Supreme Court has made clear that there can be no genuine dispute in the absence of a thorough and fair investigation. (See *Wilson*, *supra*, 42 Cal.4th at p. 723 [genuine dispute must be based on reasonable

12

grounds].) As the SAC alleged an inadequate investigation and dilatory claim handling procedures, the genuine dispute rule provides no basis for sustaining the demurrer.

Appellant's reliance on *Rappaport-Scott*, *supra*, and *Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443 (*Behnke*) is misplaced. In those cases, the insurer fairly investigated, processed and evaluated the insured's claim. In *Rappaport-Scott*, *supra*, 146 Cal.App.4th at page 834, the insurer made an offer of settlement and participated in meditation prior to arbitration. In *Behnke*, the insurer provided a reasonable explanation for disputing the hourly rate charged by the insured's *Cumis* counsel (see *Behnke*, *supra*, 196 Cal.App.4th at p. 1470).[5] In contrast, here, the SAC alleged that the insurer failed to investigate appellant's claim, failed to respond in good faith to appellant's settlement demand, failed to make its own settlement offer, refused to accept appellant's offer to mediate, and provided no explanation for withholding payment. In short, on the facts alleged, the genuine dispute rule does not assist the insurer.

### 3. *Bad Faith*

The insurer further contends that an insurer's failure to investigate, evaluate, or attempt in good faith to settle its insured's claim does not constitute bad faith except under limited circumstances, as an insurer has a statutory right to arbitrate disputes over the amount of damages. (See § 11580.2, subd. (f) ["The policy . . . shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of

---

[5] *Cumis* counsel refers to independent counsel selected by an insured but paid for by an insurer as required by Civil Code section 2860 and *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358.

disagreement, by arbitration."].)  According to the insurer, it may be liable only where the damages plainly exceed the policy limits.  In all other circumstances, the insurer contends, when faced with a claim for which liability is shown with reasonable certainty, it may refuse to investigate, evaluate or even respond to its insured, force the insured to incur the costs of arbitration, and avoid liability for breaching its common law and statutory duties so long as the ultimate award is less than the insured's initial demand.  This position is at odds with California common law and the statutory requirements of the Insurance Code.

The insurer's reliance on *California Uninsured Motorist Practice* (CEB 2d ed. 2013) to support its position is misplaced.  Summarizing the holding in *Hightower v. Farmers Insurance Exchange* (1995) 38 Cal.App.4th 853 (*Hightower*), the treatise states:

> " . . . In *Hightower*, the court held there is bad faith when:
>
> \* The owner of an uninsured motorist policy makes a claim for which liability of the uninsured motorist is clear;
>
> \* Damages plainly exceed the uninsured motorist coverage policy limits; and
>
> \* The insurer unreasonably refuses to pay."  (*California Uninsured Motorist Practice*, *supra*, § 5.9, at pp. 5-9.)

Although bad faith was found when these three elements were present, the treatise neither stated nor suggested there could be no finding of bad faith under other circumstances.

More important, the *Hightower* court expressly rejected the position advocated here by the insurer.  Recognizing that an insurer has a statutory right to binding arbitration when the insurer and insured disagree over the existence or extent of coverage (see § 11580.2), the court held that the adoption of that statutory

14

provision did not abrogate the insurer's duty of good faith in handling uninsured motorist claims. (*Hightower*, *supra*, 38 Cal.App.4th at pp. 862-863.) Rejecting the position now advanced by the insurer, the court observed: "Under [the insurer's] interpretation of the statute, an insurer could 'stonewall' uninsured motorist claimants in every case but avoid bad faith liability through the simple act of requesting arbitration and refusing to pay until ordered to do so by an arbitrator. We cannot ascribe such an intent to the Legislature." (*Id.* at p. 863.) The court further stated: "Where there is no issue reasonably to be resolved by arbitration, as in a case where the insured's damages plainly exceed policy limits and the liability of the uninsured motorist is clear, the failure to attempt to effectuate a prompt and fair settlement violates the insurer's statutory duties (Ins. Code, § 790.03, subd. (h)(5)) and gives rise to tort liability. *Similarly, an insurer cannot shield other dilatory conduct, such as failing to investigate a claim, by the mere act of requesting uninsured motorist arbitration.*" (*Hightower*, at p. 863, italics added.)

Thus, an insurer may be liable for bad faith in failing to attempt to effectuate a prompt and fair settlement (1) where it unreasonably demands arbitration, or (2) where it commits other wrongful conduct, such as failing to investigate a claim. An insurer's statutory duty to attempt to effectuate a prompt and fair settlement is not abrogated simply because the insured's damages do not plainly exceed the policy limits. Nor is the insurer's duty to investigate a claim excused by the arbitrator's finding that the amount of damages was lower than the insured's initial demand. Even where the amount of damages is lower than the policy limits, an insurer may act unreasonably by failing to pay damages that are certain and demanding arbitration on those damages. Here, the SAC adequately stated a bad faith insurance cause of action, as it alleged that the insurer breached its statutory and common law duties to its insured by failing to adequately investigate, evaluate,

15

and process the insured's claim, and by failing to attempt to settle the claim even after liability became reasonably clear.

4.      *Causation*

Finally, the insurer argues that its alleged failure to investigate, evaluate, or process appellant's claim could not, as a matter of law, be the legal cause of appellant's damages. Specifically, it contends that in the absence of an allegation that the appellant would have settled for anything less than his initial demand, arbitration was inevitable. We disagree. It was not appellant's initial demand that made arbitration inevitable, but the insurer's alleged refusal to investigate and process his claim. Even in the face of reasonably certain damages, the insurer offered nothing. Contrary to the insurer's suggestion, the SAC did not allege appellant's demand was non-negotiable; indeed, it alleged that appellant had offered to mediate the claim, but the insurer refused. Thus, it was not appellant's conduct, but the insurer's that precluded any possible settlement and made arbitration inevitable. In short, the SAC adequately alleged causation by asserting that the insurer's conduct was the direct and proximate cause of appellant's damages, including unnecessary costs and fees incurred for the arbitration.

C.      *Conclusion*

There can be no serious dispute that an insurer is required to thoroughly and fairly investigate, process, and evaluate its insured's claim. The SAC alleged facts sufficient to state a tort claim for the insurer's breach of the duty of good faith and fair dealing under common law and for failure to attempt to effectuate a prompt and fair settlement under the Insurance Code. It further adequately alleged that the insurer's breach of its duty of good faith and its failure to attempt to effectuate a prompt and fair settlement directly and proximately caused appellant to suffer damages, including incurring unnecessary costs and fees of arbitration.

16

Accordingly, the court erred in sustaining the demurrer and dismissing the SAC with prejudice.

## DISPOSITION

The judgment is reversed, and the matter is remanded with directions to the trial court to vacate its order sustaining the demurrer to the SAC and to enter a new order overruling the demurrer.  Appellant is awarded his costs on appeal.


**CERTIFIED FOR PUBLICATION.**



MANELLA, J.


We concur:



EPSTEIN, P. J.



EDMON, J.*

_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.