Filed 9/28/16  Federici v. IDS Property Casualty Ins. Co. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHAEL FEDERICI,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>IDS PROPERTY CASUALTY<br>INSURANCE COMPANY,<br><br>    Defendant and Appellant. | B262009<br><br>(Los Angeles County<br>Super. Ct. No. BC502718) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michelle R. Rosenblatt, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup and Allison A. Arabian; Woolls & Peer and H. Douglas Galt for Defendant and Appellant.

Reisman & Reisman and Daniel A. Reisman; Law Office of John J. Perlstein and John J. Perlstein for Plaintiff and Respondent.

In this first party insurance bad faith action, defendant and appellant IDS Property Casualty Insurance Company (IDS) appeals from the judgment entered in favor of plaintiff and respondent Michael Federici (Federici) after a jury awarded Federici $335,000 in damages on his claim for unreasonable delay in payment of benefits under his automobile insurance policy for underinsured motorist (UIM) coverage. We affirm the judgment.

## BACKGROUND

### The accident and claim history

On August 10, 2011, Federici was injured in an automobile accident with an underinsured driver. The front airbag in Federici's vehicle did not deploy, and Federici complained of mouth pain at the scene of the accident.

Federici had a six-tooth dental bridge secured in his mouth by two of his own teeth. Concerned about damage to the bridge, Federici went to his regular dentist, Douglas Oswell, two days after the accident. Dr. Oswell examined Federici and found that the bridge was not mobile.

Two weeks later, Federici bit down on something and felt the bridge become loose. He went to see a different dentist, who confirmed that the bridge was loose and referred him to an oral surgeon. On September 29, 2011, the oral surgeon informed Federici that the two teeth securing the dental bridge were fractured and had to be removed. The oral surgeon advised Federici that he would need dental implants and a bone graft to secure a new bridge. The process could take a year and Federici would have to wear a temporary dental bridge in the interim. The oral surgeon removed the existing bridge, extracted the two fractured teeth, and provided Federici with a temporary bridge, which broke several times while Federici awaited IDS's payment for the dental implants.

At the time of the accident, Federici was an insured under a policy issued by IDS that provided a limit of $5,000 in medical payment coverage and a $250,000 per person limit for bodily injury caused by an underinsured motor vehicle. Federici tendered a

2

claim for his medical expenses, including approximately $50,000 in dental expenses. His medical payment coverage was soon exhausted.

The other driver's insurer did not dispute liability and paid its policy limit of $15,000. On October 31, 2011, Federici provided IDS with evidence he had received the at-fault driver's $15,000 policy limit. In December 2011, Federici informed IDS that his medical expenses were increasing and demanded a settlement of $200,000.

In February 2012, the IDS claims adjuster assigned to the case, Robert Cannon (Cannon), informed Federici that IDS was investigating his claim and that an independent medical examination (IME) would be necessary. IDS retained Dr. Richard Boudreau, an oral and maxillo-facial surgeon, to determine whether Federici's dental problems were caused by the accident or were preexisting. Dr. Boudreau examined Federici in March 2012 and found that Federici had an exceedingly poor state of dental health that predisposed his teeth to fracture with minimal impact, a condition Dr. Boudreau described as "'eggshell' status." Dr. Boudreau noted that Federici's dentist had submitted a claim to replace the dental bridge in 2008 because of recurrent decay, but the work had never been performed. Dr. Boudreau was unable to determine whether the factures in Federici's teeth were preexisting or whether they were caused by the accident. He concluded, however, that "[o]ptimum treatment involves dental implants to support the bridge."

On April 5, 2012, Federici demanded $100,000 as a "last effort to settlement" before retaining an attorney. IDS offered $37,000, which covered only one of Federici's two fractured teeth and did not include any allowance for dental implants. Federici rejected the offer and retained counsel to represent him.

In August 2012, Federici's attorney demanded payment of the policy limit. IDS responded by increasing its settlement offer to $40,000. IDS then transferred responsibility for Federici's claim from Cannon to litigation adjuster Dan Thompson. Thompson's initial review of the file on August 28, 2012, led him to conclude that an arbitrator could award Federici in excess of $100,000, and he raised the reserve set for the claim to $80,000. At the time, Thompson erroneously believed that the policy limit

3

was $100,000.  He subsequently learned that the per accident limit on Federici's policy was $250,000, and not $100,000.  Thompson noted that Federici was missing his front teeth, that the front airbag in Federici's car did not deploy during the accident and that "it is not inconceivable he hit his mouth in this impact."  Thompson then sent the file to outside counsel for review.

In early October 2012, IDS's counsel advised IDS that Federici's claim could be valued at $170,000.  On December 11, 2012, Thompson contacted Federici's counsel and offered $120,000.  The claim settled for $140,000 shortly thereafter.

**The instant bad faith action**

Federici commenced this action against IDS in March 2013 for breach of the implied covenant of good faith and fair dealing.  The matter proceeded to a jury trial.

At the conclusion of the trial, the jury returned a special verdict finding that IDS had unreasonably delayed payment of policy benefits and awarded Federici $35,000 in economic damages and $300,000 in noneconomic damages.  The trial court denied IDS's motion for a new trial, and this appeal followed.

**IDS's CONTENTIONS**

IDS contends Federici's settlement of his UIM claim precluded him from pursuing a bad faith action; that it had no obligation to settle Federici's claim until the value of the claim was determined either by agreement or by the arbitrator; and that the existence of a genuine dispute regarding the cause of Federici's injury precluded any bad faith liability.  IDS further contends the trial court erred by excluding certain expert testimony and by failing to instruct the jury on the applicable law and measure of damages.  Finally, IDS claims the damages award is excessive as a matter of law.

**DISCUSSION**

**I.  Bad faith claim**

    **A.  *Applicable law and standard of review***

The law implies in every insurance contract a covenant of good faith and fair dealing that "'requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits.  To fulfill its implied obligation, an

4

insurer must give at least as much consideration to the interests of the insured as it gives to its own interests.'" (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 (*Wilson*).) An insurer that unreasonably delays payment of benefits due under a policy may be held liable in tort for breach of the implied covenant. (*Maslo v. Ameriprise Auto & Home Ins.* (2014) 227 Cal.App.4th 626, 633 (*Maslo*); *Brehm v. 21st Century Ins. Co.* (2008) 166 Cal.App.4th 1225, 1237 (*Brehm*).)

"An insurer is said to act in 'bad faith' when it breaches its duty to deal 'fairly' and 'in good faith' with its insured. [Citation.] The term 'bad faith' does not connote 'positive misconduct of a malicious or immoral nature' [citation]; it simply means the insurer acted deliberately." (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1209.) "[A]n insured plaintiff need only show, for example, that the insurer unreasonably refused to pay benefits or failed to accept a reasonable settlement offer; there is no requirement to establish *subjective* bad faith. [Citations.]" (*Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1236.) To prevail on a bad faith claim, an insured must establish that benefits due under the policy were withheld and that the reason for withholding the benefits was unreasonable or without proper cause. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 949.)

We review the jury's finding that IDS's handling of Federici's UIM claim constituted bad faith under the substantial evidence standard. (*Fleming v. Safeco Ins. Co.* (1984) 160 Cal.App.3d 31, 37.) Under that standard, the power of a reviewing court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, that will support the jury's verdict. All conflicts in the evidence must be resolved in favor of the jury's findings, and when two or more inferences can be reasonably deduced from the facts, the reviewing court may not substitute its deductions for those of the trier of fact. (*Ibid*.)

**B. Settlement with IDS did not preclude Federici's bad faith claim**

IDS contends Federici's settlement of his UIM claim precluded him from pursuing a bad faith action, citing the California Supreme Court's decision in *Moradi-Shalal v.*

5

*Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 (*Moradi-Shalal*) as support for this argument. That case, however, is inapposite.

*Moradi-Shalal* concerned a third-party statutory claim against the tortfeasor's insurer under Insurance Code section 790.03 for unfair settlement practices. Overruling its prior decision in *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880, which held that a private litigant could bring an action for civil liability against an insurer under Insurance Code section 790.03 for engaging in unfair claims settlement practices, the Supreme Court in *Moradi-Shalal* held that there is no private right of action under the statute. (*Moradi-Shalal, supra,* 46 Cal.3d at p. 304.) The Supreme Court stated that its ruling would not apply, however, to any statutory claim filed before its decision in *Moradi-Shalal* became final. For these pending cases, the court determined that "there must be a conclusive judicial determination of the insured's liability before the third party can succeed" in such an action and that "settlement is an insufficient conclusion of the underlying action." (*Id.* at p. 306.)

The Supreme Court subsequently made clear that its decision in *Moradi-Shalal* had no impact on "traditional common law theories of private recovery against insurers," including breach of the implied covenant of good faith and fair dealing, and that "*first party* bad faith actions were unaffected by *Moradi-Shalal*." (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 373 (*Zhang*); see also *Zephyr Park v. Superior Court* (1989) 213 Cal.App.3d 833, 838 [insured retain common law cause of action for bad faith settlement practices].)[1]

The instant action does not involve a statutory claim under Insurance Code section 790.03, nor was this case pending at the time *Moradi-Shalal* was decided. *Moradi-Shalal*

---

[1]     IDS also cited *Interinsurance Exchange v. Superior Court* (1989) 213 Cal.App.3d 1439 as a case "on point" in which the court applied *Moradi-Shalal's* requirement of a conclusive determination of liability by a judge or an arbitrator to preclude an insured from proceeding against an insurer to pursue a bad faith failure to settle a claim under a UM policy. That case is inapposite, as it involved a statutory bad faith claim under Insurance Code section 790.03 (*Interinsurance Exchange*, at p. 1441), and not a common law cause of action for bad faith failure to settle.

6

is inapplicable to the common law bad faith claim on which Federici prevailed at trial. (*Zhang, supra,* 57 Cal.4th at p. 373.)

### C.  IDS's right to arbitrate did not relieve it from bad faith liability

IDS argues that Insurance Code section 11580.2, subdivision (f), immunizes it from liability for delay in settling Federici's claim because that statute accords it the right to have an arbitrator determine the value of the claim.  Insurance Code section 11580.2, subdivision (f), provides in relevant part:  "The policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer, or in the event of disagreement, by arbitration."  The IDS policy issued to Federici provided for such arbitration.

Numerous courts have rejected the argument that an insurer's statutory or contractual right to arbitrate a UIM claim immunizes it from liability for bad faith in its handling of the claim.  (See, e.g., *Maslo, supra*, 227 Cal.App.4th at p. 637; *Brehm, supra*, 166 Cal.App.4th at pp. 1243-1244; *Hightower v. Farmers Ins. Exchange* (1995) 38 Cal.App.4th 853, 863.)  In *Hightower*, the court concluded that "the mere availability of an arbitration procedure does not insulate an insurer from liability for bad faith in its handling of an uninsured motorist claim." (*Hightower*, at p. 862.)  The court in *Hightower* noted that a contrary rule would allow an insurer to "'stonewall' uninsured motorist claimants in every case but avoid bad faith liability through the simple act of requesting arbitration and refusing to pay until ordered to do so by an arbitrator."  (*Id.* at p. 863.)

The court in *Brehm* reached a similar conclusion with respect to an insurer's contractual right to arbitrate a UIM claim:  "The issue is not whether, having failed to reach an agreement with [the insured] as to the extent of his injuries and, therefore, the value of his UIM claim, [the insurer] had an absolute right to demand arbitration -- it did -- but whether [the insurer] had an implied obligation to honestly assess [the insured's] claim and to make a reasonable effort to resolve any dispute with him as to the amount of his damages before invoking that right. . . .  [¶]  Indeed, by making lack of agreement as

7

to the value of the claim an express precondition to demanding arbitration, the policy itself contemplates the parties will first make an affirmative effort to resolve their dispute, in effect creating a contractual duty to discuss the claim to which the implied covenant of good faith and fair dealing properly attaches." (*Brehm, supra*, 166 Cal.App.4th at p. 1242.)

The availability of a statutory and contractual right to arbitrate Federici's claim did not relieve IDS of its obligation to attempt in good faith to settle the claim within a reasonable period of time.

### D. Substantial evidence supports the jury's finding of bad faith

IDS contends the evidence is insufficient to support the jury's bad faith finding because there was a genuine dispute regarding the merits and value of Federici's claim. An insurer can negate an insured's bad faith claim by demonstrating the existence of a "genuine dispute" regarding coverage. (*Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 347.) The existence of a genuine dispute does not, however, relieve an insurer from its obligation to thoroughly and fairly investigate, process, and evaluate an insured's claim. (*Wilson, supra,* 42 Cal.4th at p. 723.) "A *genuine* dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds. [Citations.]" (*Ibid.*)

The genuine dispute rule is generally applied in the context of a motion for summary adjudication of a bad faith claim when the insurer establishes by undisputed facts that its withholding of policy benefits, even if ultimately erroneous and a breach of contract, was due to a genuine dispute with its insured. (See, e.g., *Wilson, supra,* 42 Cal.4th 713; *Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1237.) The rule does not apply in instances where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably. (*Wilson*, at p. 724.)

IDS contends there was "undisputed" evidence that Federici's teeth were predisposed to fracture with minimal impact and that the IME dentist could not determine whether or not the teeth were fractured before the accident. The trial court found these

8

facts insufficient to establish the existence of a genuine dispute entitling IDS to judgment as a matter of law, in light of key facts in IDS's claim file that were available at the time IDS valued Federici's claim at $37,000. These facts, subsequently proven through evidence presented at the trial, include the following: the front airbag in Federici's vehicle did not deploy during the accident; Federici complained of mouth pain at the scene of the accident, and he expressed concern to both IDS's claims adjuster and to his dentist that his bridge was loose. A dentist subsequently confirmed that Federici's teeth were fractured and that dental implants were necessary to secure a new bridge. The IME dentist confirmed that dental implants were the optimal treatment alternative. IDS's initial settlement offer, made eight months after the accident, did not include the cost of dental implants and included only one of Federici's two fractured teeth. IDS did not pay Federici's claim until more than a year after the accident. Substantial evidence supports the jury's determination that IDS unreasonably delayed payment of Federici's claim. The genuine dispute doctrine does not negate the jury's finding. (*Wilson, supra,* 42 Cal.4th at p. 724.)

## II. Alleged evidentiary error

IDS contends the trial court committed prejudicial error by precluding its expert from testifying that a reasonable claims adjuster would have investigated causation. Before the trial commenced, the trial court granted a motion in limine precluding IDS's claims handling expert, David Reilly (Reilly), from opining that Federici's dental record showed evidence of no tooth fracture following the accident. During the trial, IDS's counsel asked Reilly if he had an opinion as to whether it was proper for IDS's claims adjuster, Cannon, to be concerned about whether Federici's fractured teeth were caused by the accident. Referring to a note from Federici's dentist,[2] counsel asked: "What is it about this note that causes you to form the opinion that supports Mr. Cannon's raising the causation question?" Federici's counsel objected, and following a sidebar conference,

---

[2] The relevant portion of the dentist's note states: "patient came in w/accident trauma . . . visual done nothing was detected no mobility."

the trial court inquired whether Reilly had been questioned about the note during his deposition and what the substance of his response had been. Federici's counsel informed the court that Reilly had testified during deposition that "'[t]his note leads me to believe that his teeth weren't fractured.'" The trial court then ruled that Reilly could not testify as to his belief regarding the content of the note because "The record doesn't say one way or the other whether or not the teeth were fractured."

Reilly was allowed to testify that the dentist's note raised a causation issue. The note was admitted into evidence, and the jury was able to read it. The record discloses no abuse of discretion.

## III. Alleged instructional error

### A. Modified CACI No. 2337

IDS contends the trial court erred by instructing the jury pursuant to a modified version of CACI No. 2337. The instruction given provided in relevant part as follows:

> "In determining whether IDS Property Casualty Insurance Company acted unreasonably or without proper cause, you may consider whether the defendant did any of the following: A, misrepresented to Mr. Federici relevant facts or insurance policy provision related to any coverage at issue; failed to acknowledge and act reasonably promptly after receiving communications about Mr. Federici's claim under the insurance policy; did not attempt in good faith to reach a prompt, fair and equitable settlement of Mr. Federici's claim after liability had become reasonably clear."[3]

IDS objects to the language of subdivision (d) of the modified version of CACI No. 2337 as an incorrect statement of the law. It claims no benefits were due under the policy until the value of Federici's claim was fixed by agreement or arbitration. As discussed previously, that argument has been rejected by numerous courts, as it would allow insurers to "stonewall" UIM claimants but avoid bad faith liability simply by requesting arbitration and refusing to pay policy benefits until ordered to do so by an arbitrator. (See, e.g., *Maslo, supra*, 227 Cal.App.4th at p. 637; *Brehm, supra*, 166

---

**3** The parties agreed to omit subdivision (c) of the proposed instruction, and the trial court struck subdivision (e).

10

Cal.App.4th at pp. 1243-1244; *Hightower, supra*, 38 Cal.App.4th at p. 866 ["the mere availability of an arbitration procedure does not insulate an insurer from liability for bad faith in its handling of an uninsured motorist claim"].) IDS fails to establish that the language of subdivision (d) was an incorrect statement of the law.

IDS next contends the language of subdivision (d) of CACI No. 2337, which mirrors some of the language of Insurance Code section 790.03,[4] "had the practical effect of recognizing a private cause of action" for violation of that statute, in contravention of the Supreme Court's holding in *Moradi-Shalal*. A similar argument was rejected by the court in *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847 (*Shade Foods*). The insurer in that case argued that "the trial court erred by using an elaborated version of BAJI No. 12.98, which borrowed from Insurance Code section 790.03, subdivision (h), for the purpose of instructing the jury on factors relevant to the determination of bad faith." (*Shade Foods*, at p. 916.) The court in *Shade Foods* held that while "it is true that *Moradi-Shalal* . . . bars private causes of action based on section 790.03 . . . violations of the section 'may evidence the insurer's breach of duty to its insured under the implied covenant' of good faith and fair dealing with its insured. [Citation.]" (*Shade Foods*, at pp. 916-917; see also *Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1078 [evidence of an insurer's violation of Insurance Code section 790.03 properly admitted to prove insurer's bad faith].) The trial court did not err by instructing the jury that in evaluating IDS's conduct, it could consider whether IDS "did not attempt in good faith to reach a prompt, fair and equitable settlement of Mr. Federici's claim after liability had become reasonably clear."

### B. Special instruction on damages

IDS contends the trial court erred by refusing to give, without modification, the following proposed special instruction on damages:

---

**4** Subdivision (h)(5) of Insurance Code section 790.03 states that "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear" is an unfair and deceptive act or practice in the business of insurance.

11

"In December 2012, Mr. Federici and IDS Property Casualty Insurance Company reached an agreement concerning the value of his underinsured motorist claim and IDS Property Casualty Insurance Company paid Mr. Federici that agreed value. Because of this, Mr. Federici cannot recover in this action any damages attributable to the injuries he suffered in the automobile accident caused by the underinsured motorist. This includes damages for economic loss such as medical expenses and loss of earnings. It also includes damages for noneconomic loss such as emotional distress and pain and suffering. Your verdict may not include any of these damages."

After discussing the proposed instruction with counsel and hearing argument from both sides, the trial court modified the instruction and it was given to the jury as follows:

"In December 2012, Mr. Federici and IDS Property Casualty Insurance Company reached an agreement concerning the value of his underinsured motorist claim and IDS Property Casualty Company paid Mr. Federici that agreed value. Because of this, Mr. Federici cannot recover in this action any damages attributable to the injuries he suffered in the automobile accident caused by the underinsured motorist. Your damages may only include damages caused by IDS."

IDS argues that the trial court's deletion of the last two sentences of the proposed instruction was an incorrect statement of the law because it did not inform the jury that Federici could not recover damages for pain and suffering sustained in the automobile accident. IDS maintains that the jury accordingly presumed it could award such damages because Federici testified only that he suffered emotional distress as a result of the accident, and not because the settlement was delayed.

IDS's assertion that Federici testified only as to emotional distress he suffered as the result of the accident, and not as the result of the delayed settlement, is both incorrect and unsupported by the record. Federici testified that IDS's delay in settling his claim caused him to suffer embarrassment and anxiety and that he found the delay to be "devastating."

The modified instruction informed the jury that Federici could not recover any damages attributable to his injuries in the automobile accident, and that their award could

12

include only damages caused by IDS. A reviewing court presumes the jury followed the trial court's instructions and that its verdict reflects the legal limitations imposed by those instructions. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 803-804.) The record discloses no instructional error.

## IV. Damages

IDS contends the evidence is insufficient to support the jury's award of damages. An appellate court reviews a jury's award of damages under the substantial evidence standard and defers to the trial court's denial of a new trial motion based on excessive damages. (*Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 720-721.) A reviewing court "will interfere only when the award is so disproportionate to the injuries suffered that it shocks the conscience and virtually compels the conclusion the award was based on passion or prejudice. [Citation.]" (*Ibid.*)

"There are no fixed or absolute standards by which an appellate court can measure in monetary terms the extent of the damages suffered by a plaintiff as a result of the wrongful act of the defendant. The duty of an appellate court is to uphold the jury and trial judge whenever possible. [Citation.] The amount to be awarded is 'a matter on which there legitimately may be a wide difference of opinion' [citation]. In considering the contention that the damages are excessive the appellate court must determine every conflict in the evidence in respondent's favor, and must give him the benefit of every inference reasonably to be drawn from the record [citation]." (*Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 508.)

### A. Economic damages

The jury awarded economic damages consisting of attorney fees in the amount of $35,000. Under California law, such fees are recoverable as economic damages for an insurer's bad faith. "When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss -- damages -- proximately caused by the tort. [Citation.]" (*Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817.)

13

The parties in the instant case stipulated that Federici paid his attorney $35,000 for representing him in his UIM claim against IDS. Substantial evidence accordingly supports the jury's award of economic damages.

### B.  *Noneconomic damages*

IDS contends the jury's $300,000 noneconomic damages award is excessive, focusing on the ratio between noneconomic damages and the $35,000 in economic damages awarded.  As support for its position, IDS cites *Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197 (*Major*), in which the court stated:  "In determining whether the noneconomic damages award is excessive, we compare the amount of that award to the economic damages award, to see if there is a reasonable relationship between the two." (*Id.* at p. 1216.)  The court in *Major* found that a two-to-one ratio between the noneconomic damages and economic damages awarded in that case was reasonable, and that the noneconomic damages award was therefore not excessive. (*Ibid.*)  IDS argues that the nearly ten-to-one ratio between noneconomic damages and economic damages awarded to Federici in this case is excessive as a matter of law.

We will not usurp the jury's role in assessing damages by substituting a mathematical formula to measure the reasonableness of the award.  While we may consider the ratio of noneconomic damages to economic damages, the verdict must be withheld as long as "there is a reasonable relationship between the two." (*Major, supra,* 169 Cal.App.4th at p. 1216.)  Assessing the reasonableness of that relationship requires a review of the evidence.

There was evidence that Federici had no front teeth for a substantial period of time while he awaited payment from IDS for the dental implants necessary to support a new dental bridge and that he suffered embarrassment as a result.  The temporary bridge he wore in the interim broke several times, leaving him again toothless.  With the temporary bridge, Federici's diet was limited to soft foods that he had to cut into little pieces and chew on his remaining three natural teeth.  Federici testified that he paid for a more sturdy temporary bridge out of his own funds, that he was harassed by bill collectors, and that he suffered anxiety and distress as a result.

14

To support its argument that the noneconomic damages award was excessive, IDS cites evidence that Federici spent a portion of his vehicle settlement proceeds to purchase a new car, and that he never sought medical treatment for the anxiety and distress he allegedly suffered as a result of the delayed settlement.  Under the standard applicable here, however, we do not reweigh the evidence; rather, we consider the evidence in the light most favorable to the judgment, accepting every reasonable inference and resolving all conflicts in its favor.  (*Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1078.)  There is substantial evidence in the record to support the jury's award of noneconomic damages.

## DISPOSITION

The judgment is affirmed.  Federici is awarded his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT


15