Filed 12/18/23; Certified for Publication 1/11/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KATHRYN TORNAI,<br><br>   Plaintiff and Respondent,<br>v.<br><br>CSAA INSURANCE EXCHANGE,<br><br>   Defendant and Appellant. | A167666<br><br>(Sonoma County<br>Super. Ct. No. SCV271737) |

After plaintiff Kathryn Tornai filed a lawsuit against her insurance company for breach of contract and bad faith, defendant insurance company filed a motion to compel arbitration of her underinsured motorist claim. The motion was made pursuant to a provision in plaintiff's automobile policy, which, as mandated by Insurance Code[1] section 11580.2, subdivision (f), requires the parties to arbitrate any dispute over entitlement to recover damages caused by an uninsured or underinsured motorist[2] or the amount of

_____

[1] Undesignated statutory references are to the Insurance Code unless otherwise specified.

[2] Section 11580.2 governs both uninsured motorist (UM) and underinsured motorist (UIM) coverage, and the policy here defines " 'Uninsured motor vehicle' " to include "underinsured motor vehicle[s]." For purposes of this opinion, the terms are used interchangeably.

1

damages. The trial court denied the motion, and defendant appeals. We conclude that the denial was error, and we reverse.

## BACKGROUND

### The Parties and the General Setting

In August 2021, plaintiff Kathryn Tornai (plaintiff) entered into a contract with defendant CSAA Insurance Exchange (defendant) to provide automobile insurance for her vehicle (policy). The policy had a clause in the UM/UIM coverage endorsement, which read: "**We** will pay damages, other than punitive or exemplary damages, for **bodily injury** to an **insured person**, which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle**. The **bodily injury** must be caused by accident and arise out of the ownership, maintenance or use of the **uninsured motor vehicle**. [¶] Determination whether an **insured person** is legally entitled to recover damages or the amount of damages shall be made by agreement between the **insured person** and **us**. If no agreement is reached, the decision will be made by arbitration."

Several paragraphs later, the policy reads: "**ARBITRATION** [¶] If an **insured person** makes a claim under this Part and **we** do not agree that such person is legally entitled to recover damages from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** to such **insured person**, or, if so entitled, do not agree as to the amount, then either party, on written demand of the other, shall institute arbitration proceedings as provided in Section 11580.2 and the following sections of the Insurance Code . . . ."

According to the complaint that plaintiff would come to file, on February 2, 2022, she was injured in a traffic accident with another driver. In September, plaintiff settled with the driver's insurance carrier for $25,000,

2

his policy limits.

Plaintiff's policy provided UM/UIM coverage of up to $300,000 per accident. Plaintiff made a written demand to defendant under the policy for $275,000—the policy limits of $300,000, less the $25,000 she had already received from the settlement with the UIM. Defendant refused to tender the $275,000 demanded.

**The Proceedings Below**

On October 3, 2022, plaintiff filed her complaint against defendant alleging breach of written contract and breach of the implied covenant of good faith and fair dealing. The allegations in support of both causes of action were the same and included the following: defendant failed to settle or make any offer "when Plaintiff's damages clearly exceed the policy limit with numerous surgeries having been undergone"; defendant failed to "promptly respond to Plaintiff's communications with respect to the claim" and "ignor[ed] time limited settlement demands"; defendant "[w]ithh[eld] benefits due to Plaintiff when [defendant] knew, or should have known, Plaintiff was entitled to"; and defendant failed to adequately investigate plaintiff's injuries and damages.

On November 18, defendant filed a motion to compel arbitration. It was accompanied by a memorandum of points and authorities and the declaration of defense counsel. The declaration in turn attached a copy of plaintiff's policy; defense counsel's letter to plaintiff's counsel demanding the parties arbitrate their dispute over the UIM claim pursuant to the arbitration provision in the policy; and plaintiff's counsel's subsequent email again pressing for tender of policy limits of $275,000, but otherwise not responding to the arbitration demand. In its motion, defendant asserted that it "has disputed the amount that Plaintiff claimed under the policy and

3

therefore the dispute falls squarely within the arbitration provision of [t]he Auto Policy."

Plaintiff filed her opposition, which was accompanied by her counsel's declaration. The declaration attached plaintiff's written demands to defendant for tender of the available policy limits in the amount of $275,000. It also attached copies of medical bills and expenses purportedly totaling $30,451.98 as of August 2022, which plaintiff had incurred as a result of the accident and she had produced in response to defendant's discovery requests.

In her opposition, plaintiff argued that "[t]his case falls outside the narrow scope of . . . section 11580.2 and, simply, does not present an arbitrable UM dispute." She maintained that "arbitration cannot be compelled as to funds that are undisputedly owed." (Capitalization omitted.) According to plaintiff, defendant "cannot dispute that [she] is entitled to at least $30,451.98 for medical expenses on her UM claim." She further asserted defendant "engaged in delay tactics to avoid payment." Defendant's failure to pay her $30,451.98, plaintiff argued, "is a violation of [defendant's] duty to Plaintiff" and "is unacceptable and should not be condoned by allowing [defendant] to hide behind arbitration."

Next, relying mainly on *Hightower v. Farmers Insurance Exchange* (1995) 38 Cal.App.4th 853 (*Hightower*), plaintiff argued she "should not be required to complete arbitration proceedings prior to filing [her lawsuit]." She claimed that "[i]f an insurer breaches the insurance contract and/or engages in tortious conduct, as [defendant] has done here by delaying payment of undisputed funds, it should not be allowed a safe-harbor while the arbitration is being conducted."

Finally, plaintiff raised a waiver defense. She argued that the trial court "can, and should, hold that [defendant's] bad faith in refusing to pay its

4

insured $30,451.98 undisputedly owed . . . has resulted in the waiver of [defendant's] right to compel arbitration of Plaintiff's claim for payment of the $244,548.02 remaining in dispute under the $300,000.00 UM policy." (Italics omitted.)

Defendant filed a reply, asserting that plaintiff's opposition made "two key factual misstatements." First, defendant argued that contrary to plaintiff's assertion, it had in fact offered to pay plaintiff $2,920 for medical expenses. Second, defendant refuted plaintiff's claim that $30,451.98 is " 'undisputedly owed' " to her. Defendant explained: "This case presents the complication of there being Medi-Cal insurance payments made for medical services related to the claim. Defendant has asked Plaintiff to provide the Medi-Cal documentation, as Defendant acknowledges that the *reduced amount* of Medi-Cal's actual payments is legally owed. However, Plaintiff has—and continues—to refuse to provide the Medi-Cal payment documentation, which would assist in quantifying the amount legally owed." Defendant further denied any allegation that it had acted in bad faith. It argued that "it is in fact Plaintiff who is 'stonewall[ing]' on providing [it] the Medi-Cal payment documentation." Defendant also contended that "[p]laintiff's medical billing is nowhere near 'plainly exceed[ing]' policy limits . . . ."

On April 4, after holding a hearing, the trial court issued its order denying the motion. After setting forth the procedural background, it cited to a number of legal authorities, including section 11580.2 and several cases. One of those cases was *Hightower*, *supra*, 38 Cal.App.4th 853, which was cited in plaintiff's opposition and "held, among other things, that an insurer is not entitled to immunity from claims for bad faith simply by requesting arbitration instead of settling the claim, and therefore cannot shield itself

5

from such a claim simply by seeking arbitration." After citing to *Hightower*, though, the court acknowledged that *Hightower* "was not, however, faced with a question of whether to order arbitration of an action involving a claim of bad faith, or how to determine such a question."

Interestingly, another case the trial court cited to was *McIsaac v. Foremost Ins. Co. Grand Rapids, Michigan* (2021) 64 Cal.App.5th 418 (*McIsaac*), which "held that an insurer was entitled to arbitration under . . . section 11580.2(f)" where there was a dispute over the amount of damages owed to the plaintiff, even though the plaintiff had brought a bad faith claim against the insurer.

The court then stated its reasons for denying the motion as follows:

"Plaintiff's claims involve different alleged wrongdoing and disputes. She alleges [in her opposition] . . . , and provides evidence demonstrating, that after she made a demand under the Policy, Defendant unreasonably failed to investigate the claim or settle the claim, Defendant has failed to make any effort to address Plaintiff's request for payment, resolve the matter in any way, or pay any funds whatsoever, even though Plaintiff demonstrated that her medical bills and expenses amount to $30,451.98, so that she is unequivocally entitled to at least that amount."

"Defendant for its part makes no effort in its moving papers to demonstrate that the dispute is over simple coverage or the amount to which Plaintiff is entitled. In short, is [*sic*] has done nothing to show that this is within the ambit of Ins. Code section 11580.2(f)'s arbitration coverage or that this is not, as Plaintiff alleges, at its root a dispute over alleged bad-faith handing of Plaintiff's claims. Defendant in its moving papers completely ignores the fact that Plaintiff had alleged bad faith refusal to treat [*sic*] with her or pay anything at all, in the face of a clear right to some payment, and

6

does not address the issue in any manner or provide any evidence at all regarding the issue. Moreover, unlike the insurer in *McIsaac*, defendant here expressly seeks to submit the entire dispute to arbitration, simply stating in its motion, at 1:24-26, that it moves 'the Court for an order compelling arbitration of the present dispute between Defendant and Plaintiff . . . .' Nowhere in its moving papers does it specify that there is a dispute over the amount, much less that is seeks to compel only that dispute to arbitration, while staying the litigation as to the claim of bad faith."

The court went on, "Defendant's reply papers do at least purport to address the issue, but this is utterly insufficient." After stating defendant had "the burden here of showing the arbitration applies to the claims," it found that it failed to do so in its moving papers and "cannot now cure this defect by addressing it in its reply." The court, however, concluded that in any event "the arguments and information set forth in the reply papers fail to resolve the issue in Defendant's favor." In particular, the court addressed defendant's claim that it had offered to pay plaintiff $2,920 for medical expenses, finding that "if plaintiff, as a result of the accident, in fact clearly had medical bills which exceeded the amount offered and was accordingly entitled to something greater, Defendant cannot simply offer less and claim that this is a mere dispute over the amount owed."

Finally, the court stated, "Although there may ultimately be a dispute about the amount owed, at the present the claim is based on a simple refusal to pay anything, despite clear and unequivocally [*sic*] evidence showing that Plaintiff is entitled to some payment, or to settle or engage with Plaintiff in any way."

7

On April 7, defendant appealed.[3]  Plaintiff did not file a respondent's brief, and so we will "decide the appeal on the record, the opening brief, and any oral argument by [defendant]."  (Cal. Rules of Court, rule 8.220(a)(2).)

## DISCUSSION

Defendant contends the trial court erred in denying its motion to compel arbitration because it was entitled to arbitrate the amount of plaintiff's UIM claim under section 11580.2, subdivision (f) and the terms of the policy.  Defendant also argues that it did not waive the right to compel arbitration, an issue that plaintiff raised in her opposition, but the trial court did not reach.

### General Legal Principles and Standard of Review

Petitions or motions to compel arbitration are governed by Code of Civil Procedure section 1281.2, which states:  "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court *shall* order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) [t]he right to compel arbitration has been waived by the petitioner; or [¶] (b) [g]rounds exist for the recission of the agreement."  (Italics added.)

"The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the

---

[3] Although the notice of appeal incorrectly describes the date of the order appealed from, we construe the notice as appealing from the order filed on April 4, 2023 and thus deem it valid.  (See *Yolo County Dept. of Child Support Services v. Lowery* (2009) 176 Cal.App.4th 1243, 1246; see also *Dang v. Smith* (2010) 190 Cal.App.4th 646, 656–657.)

8

evidence any fact necessary to its defense." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 (*Engalla*).)

"[I]n ruling on a petition to compel, the court must determine whether the parties entered into an enforceable agreement to arbitrate that reaches the dispute in question, construing the agreement to the limited extent necessary to make this determination." (*California Correctional Peace Officers Assn. v. State of California* (2006) 142 Cal.App.4th 198, 204–205 (*California Correctional Peace Officers*).) If such an agreement exists, the court must ordinarily order the parties to arbitration. (*Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 26, fn. omitted, citing Code Civ. Proc., § 1281.2.)

A relevant principle governing the threshold issue of arbitrability is that " 'in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.' " (*California Teamsters Public, Professional and Medical Employees Union, Local 911A v. County of Solano* (1991) 233 Cal.App.3d 800, 803 (*California Teamsters Public*), quoting *AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 649; see *California Correctional Peace Officers*, *supra*, 142 Cal.App.4th at p. 205 ["Section 1281.2 [of the Code of Civil Procedure] expressly forbids the court from reaching the merits of the parties' dispute, instructing that '[i]f the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit' "].) Another principle is that "where the agreement contains an arbitration clause, a presumption of arbitrability exists, and doubts should be resolved in favor of arbitration." (*California Teamsters Public*, *supra*, 233 Cal.App.3d at pp. 803–804; accord, *Engalla*,

9

*supra*, 15 Cal.4th at pp. 971–972; *California Correctional Peace Officers*, *supra*, 142 Cal.App.4th at p. 205.)

"There is no uniform standard of review for evaluating an order denying a motion to compel arbitration." (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.) When the court's order is based on a decision of law, we employ a de novo standard of review. (*Ibid.*) In this case, "the court's order denying a motion to compel arbitration is based on the court's finding that petitioner failed to carry its burden of proof." (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066.) "[T]he question for the reviewing court is whether that finding [was] erroneous as a matter of law." (*Ibid*; accord, *Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1121.) Also, while waiver is generally a question of fact, when, as here, the relevant facts are undisputed, the issue of waiver may be reviewed de novo. (*Bower v. Inter-Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1043, citing *Saint Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196.)

### Defendant Did Not Waive the Right to Compel Arbitration

Because the issue of waiver is potentially determinative, we address it first. Initially, as noted, plaintiff opposed arbitration on waiver grounds, but the trial court did not reach the issue. Defendant implicitly asks us to decide the issue in the first instance. Given that the trial court's ruling was limited in scope, we could in theory remand to the trial court to consider the matter. However, because the issue of waiver does not require us to resolve any conflicting evidence and we would be reviewing it de novo, "nothing would be gained by remanding for this purpose." (*Rayyis v. Superior Court* (2005) 133 Cal.App.4th 138, 150, fn. 10; *Higgins v. Superior Court* (2006) 140 Cal.App.4th 1238, 1251.) We thus resolve the issue in the first instance.

10

In her opposition below, plaintiff argued the trial "[c]ourt can, and should, hold that [defendant's] bad faith in refusing to pay its insured $30,451.98 undisputedly owed since August 29, 2022 has resulted in the *waiver* of [its] right to compel arbitration of Plaintiff's claim for payment of the $244,548.02 remaining in dispute under the $300,000 UM policy." In support of this argument, plaintiff relied primarily on *Davis v. Blue Cross of Northern California* (1979) 25 Cal.3d 418 (*Davis*).

In *Davis*, the Supreme Court concluded that a health insurance carrier had waived its right to arbitrate a dispute by deliberately failing to advise its insureds of the availability of and procedure for initiating arbitration at the time it rejected the insureds' claims. (See *Davis*, *supra*, 25 Cal.3d at pp. 426–431.) It was significant that the arbitration clause "was 'buried in an obscure provision' " of a hospitalization agreement, such that the carrier knew the insureds would not be aware of it, and that the insureds were proceeding without legal representation. (*Id.* at p. 429.) Under these circumstances, the high court held that "[i]n view of the importance of timely advice or arbitrability to the basic fairness of the arbitration process, . . . the trial court properly determined that by its action [the insurer] waived or forfeited any right subsequently to compel its insureds to submit their disputes to arbitration." (*Id.* at p. 431.)

None of the concerns regarding "basic fairness of the arbitration process" presented in *Davis* exists in this case. Plaintiff did not allege or present any evidence that defendant concealed, much less deliberately, the existence of the arbitration provision to plaintiff. It is undisputed that defendant made plaintiff, who was represented by counsel at all relevant times, aware of the arbitration provision. Thus, as defendant asserts, *Davis*

11

simply does not support plaintiff's waiver claim.[4]  We therefore conclude that defendant has not waived its right to arbitration as a matter of law.

We turn now to defendant's primary argument that the trial court should have ordered arbitration of the amount of UIM damages claimed by plaintiff, pursuant to the requirements of section 11580.2 and the terms of the policy.

### Defendant Is Entitled to Arbitrate the Amount of Plaintiff's UIM Claim

Section 11580.2 requires insurers to provide coverage for bodily injury or wrongful death caused by uninsured or underinsured motorists. (§ 11580.2; *Bouton v. USAA Casualty Ins. Co.* (2008) 43 Cal.4th 1190, 1193 (*Bouton*).)  Subdivision (f) of section 11580.2 requires language in an automobile policy that provides for arbitration of disputes:  "The policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration. . . ."

As our Supreme Court explained, "section 11580.2, subdivision (f) requires the parties to arbitrate the narrow issues of whether the insured is entitled to recover damages from the uninsured or underinsured motorist, and if so, the amount of those damages." (*Bouton*, *supra*, 43 Cal.4th at p. 1199, citing *Freeman v. State Farm Mut. Aut. Ins. Co.* (1975) 14 Cal.3d 473, 480 (*Freeman*).)  As such, "an insurer's contractual right to arbitrate the

---

[4] Plaintiff also relied on *Meyer v. Carnow* (1986) 185 Cal.App.3d 169, which mentions *Davis* in a footnote.  (*Id.* at p. 174, fn. 2.)  As defendant aptly notes, "*Meyer* is even less helpful to Plaintiff here" because it "actually reversed the trial court's ruling that a plaintiff had waived its right to arbitration by delay in filing a medical malpractice claim against a podiatrist."  (*Id.* at p. 175.) (Emphasis omitted.)

value of a UIM claim does not prevent an insured from filing suit for bad faith. [Citations.]" (*McIsaac*, *supra*, 64 Cal.App.5th at p. 423.) Put slightly differently, "if the insured files a lawsuit for 'bad faith' before resolving the UM/UIM claim, the UM/UIM claim is still subject to arbitration, even if the 'bad faith' action is not subject to arbitration." (Haning, et al., Cal. Prac. Guide: Personal Injury (The Rutter Group 2023) ¶ 7:293.5e, citing *McIsaac*.)

In this case, in accordance with section 11580.2, subdivision (f), the policy provides, in relevant part: "Determination whether an insured person is legally entitled to recover damages or the amount of damages shall be made by agreement between the insured person and us. If no agreement is reached, the decision will be made by arbitration." (Boldface omitted.) Plaintiff did not dispute the validity of this provision.

Nor was there a dispute over the interpretation of the arbitration provision of the policy or section 11580.2, subdivision (f). Both the policy and statutory language quoted above make clear that a disagreement over entitlement to UIM damages, or the amount of damages, must exist between an insurer and insured before arbitration becomes the required means of resolution. (§ 11580.2, subd. (f).)

The parties, however, took different positions as to whether a disagreement over the amount of UIM damages owed to plaintiff had arisen.

In its motion, defendant asserted that it "has disputed the amount that Plaintiff claimed under the policy and therefore the dispute falls squarely within the arbitration provision of [t]he Auto Policy."

In her opposition, plaintiff claimed she was "undisputedly owed" $30,451.98, the amount of medical bills and expenses which she had incurred as of August 2022 and for which she presented documentation. According to plaintiff, "arbitration cannot be compelled as to funds that are undisputedly

owed." Plaintiff acknowledged, however, that $244,548.02 (the difference between the remaining policy limits of $275,000 and the $30,451.98) was "remaining in dispute."

In its reply, defendant refuted plaintiff's claim that she was " 'undisputedly owed' " at least $30,451.98, explaining that it had requested from plaintiff, but was not provided, documentation from Medi-Cal, of which plaintiff was a beneficiary. As such, defendant asserted that plaintiff's refusal to provide documentation prevented it from assessing the nature and extent of the damages claims.

The above indicates that the parties plainly failed to reach an agreement as to the amount of damages owed, thereby triggering the requirements of section 11580.2, subdivision (f) and the terms of the policy for arbitration of that issue. This fact was not negated by plaintiff's contention that she was " 'undisputedly owed' " at least $30,451.98. By " 'undisputed,' " plaintiff apparently meant not that the parties in fact failed to reach an agreement over the amount of damages owed, but rather that defendant could not have reasonably disagreed—i.e., its disagreement was in bad faith. However, regardless of what caused their failure to reach an agreement over the $30,451.98, defendant and plaintiff clearly did not reach an agreement as to that amount. As asserted in its reply papers below, defendant was unable to evaluate that amount because plaintiff failed to provide documentation from Medi-Cal. But even assuming the parties did agree that plaintiff was at least owed $30,451.98, she claimed she was also entitled to the remaining, available policy limits in the amount of $244,548.02, which she expressly acknowledged "remain[ed] in dispute."

In short, the parties disagree over how much in UIM damages plaintiff is owed, and that issue therefore must be sent to arbitration pursuant to the

14

policy and section 11580.2, subdivision (f).

*McIsaac* is instructive. There, a motorcyclist was involved in an accident with a UIM and initiated a claim with his insurer under an automobile policy with an arbitration provision similar to the one in this case. (*McIsaac*, *supra*, 64 Cal.App.5th at p. 420.) After the parties were unable to reach an agreement over the amount of damages, the insured served the defendant with an arbitration demand. (*Ibid*.) The insurer responded to the demand with a letter suggesting the parties engage in basic discovery to determine if the case could be settled, and served discovery requests. (*Ibid*.) The insured did not serve discovery responses and instead filed an action against the insurer, alleging claims for breach of contract and breach of the covenant of good faith and fair dealing, among others. (*Id*. at p. 421.) The insurer filed a petition to compel arbitration and to stay the action. (*Ibid*.) The insured opposed the petition, arguing that he should not be forced to arbitrate his breach of contract and bad faith claims. (*Ibid*.) The trial court denied the petition because it concluded that section 11580.2 does not apply to bad faith claims. (*Id*. at pp. 421–422.)

Division One of this First District reversed. (*McIsaac*, *supra*, 64 Cal.App.5th at pp. 424–425.) The court noted that "if an agreement to arbitrate a controversy exists, the trial court must order arbitration." (*Id*. at p. 423, citing Code. Civ. Proc., § 1281.2.) And because the insurer filed a petition to compel arbitration showing that the parties had a written agreement to arbitrate the amount of UIM damages and were unable to reach an agreement, the court held that insurer "was entitled to an order granting the petition to compel arbitration of that limited issue." (*McIsaac*, at p. 423.) In so concluding, the court rejected the insured's and trial court's position that the insurer was not entitled to arbitrate the amount of damages because

15

the insured had alleged a nonarbitrable, bad faith cause of action. (*Ibid*.) It explained, "[t]he fact that litigation involves some nonarbitrable issues is not a basis to deny a petition to compel arbitration unless those issues involve a third party who is not contractually obligated to arbitrate." (*Id*. at p. 424, citing *Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1409; Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2020) ¶ 5:326.1.)

*McIsaac* is analogous to this case. Here, as explained above, defendant similarly filed a motion to compel arbitration showing that the parties had a written agreement to arbitrate the amount of UIM damages and were unable to reach an agreement. In the absence of any exception (which plaintiff has failed to establish, as concluded above), and regardless of whether plaintiff filed an action asserting bad faith claims, the trial court was required under Code of Civil Procedure, section 1281.2 to order arbitration of the issue of the amount of damages. (See *McIsaac*, *supra*, 64 Cal.App.5th at pp. 423–424.)

In declining to order arbitration in this case, the trial court erred. It cited a number of reasons for its ruling, but in our view, none of those reasons justified the denial of defendant's motion to compel arbitration.

It appears the court's order was premised on its mistaken view that "[n]owhere in [defendant's] moving papers does it specify that there is a dispute over the amount . . . ." Defendant did so specify. It expressly stated in its motion that it "has disputed the amount that Plaintiff claimed under the policy and therefore the dispute falls squarely within the arbitration provision of [t]he Auto Policy." Thus, to the extent the court found that defendant's motion failed to demonstrate the existence of a dispute over the amount of UIM damages, as contemplated in section 11580.2 and the policy,

16

the court was mistaken.[5]

Another basis for denying the motion to compel arbitration was the court's determination that this case was distinguishable from *McIsaac*. It found that unlike in *McIsaac*, defendant did not state in its moving papers that it seeks to compel arbitration of only the amount of the UIM damages, and did not request a stay of the litigation of the bad faith claim. It is true that defendant's motion was not as clear as the petition in *McIsaac* in that regard. However, we agree with defendant that this distinction did not support denying its motion. Like defendant, we do not read *McIsaac* to suggest that the omissions in defendant's motion require a denial of the motion. As defendant asserts, "[w]hile *McIsaac* noted that the defendant insurer had affirmatively indicated its understanding that arbitration proceedings would not preclude the plaintiff from thereafter litigating bad faith claims, there was no suggestion . . . that such a pronouncement is necessary for an insurer to seek the statutorily mandate[ed] arbitration of the contract dispute." The *McIsaac* decision did not hinge on whether the petition explicitly and/or correctly asserted that it was seeking arbitration of only the UIM damages amount, but rather whether the petition showed a valid agreement to arbitrate a controversy, as required under Code of Civil Procedure section 1281.2. (See *McIsaac*, *supra*, 64 Cal.App.5th at pp. 422, 423.) Thus, we agree with defendant that the factual distinctions that the court drew between this case and *McIsaac* were not dispositive on whether to compel arbitration.

An additional basis for denying the motion to compel arbitration was

---

[5] The court's mistaken view that defendant did not specify in its motion that there was a dispute over the UIM damages also apparently led the court to find that any argument on that issue contained in defendant's reply papers was improperly raised there for the first time.

defendant's failure to refute plaintiff's allegations of bad faith. As stated previously, the court noted that "Plaintiff alleges [in her opposition] . . . , and provides evidence demonstrating, that after she made a demand under the Policy, Defendant unreasonably failed to investigate the claim or settle the claim." The court found that defendant made no effort in its motion to address "Plaintiff's request for payment, resolve the matter in any way, or pay any funds whatsoever, even though Plaintiff demonstrated that her medical bills and expenses amount to $30,451.98, so that she is unequivocally entitled to at least that amount." Although defendant attempted to address in its reply some of plaintiff's allegations, the court noted, those arguments "fail[ed] to resolve the issue in Defendant's favor." Thus, the court found that defendant failed to show "that this is within the ambit of . . . section 11580.2(f)'s arbitration coverage or that this is not, as Plaintiff alleges, at its root a dispute over alleged bad-faith handing of Plaintiff's claims."

As we understand its comments, the court apparently credited plaintiff's allegations in her opposition that defendant had acted in bad faith by not paying her at least $30,451.98 in UIM damages or attempting to resolve the matter; required defendant to refute those allegations; and, finding that defendant failed to do so, denied the motion to compel arbitration.

In essentially accepting plaintiff's allegations of bad faith and requiring defendant to rebut those allegations, the court did not limit itself to determining whether the controversy was subject to arbitration. Instead, it appeared to rule on the potential merits of the underlying claims. This was inappropriate on a motion to compel arbitration. As discussed above, " 'in deciding whether the parties have agreed to submit a particular grievance to

18

arbitration, a court is not to rule on the potential merits of the underlying claims.' " (*California Teamsters Public, Professional, supra,* 233 Cal.App.3d at p. 803; accord, *California Correctional Peace Officers*, *supra*, 142 Cal.App.4th at p. 205, citing Code Civ. Proc., § 1281.2.) Thus, even if there were questions of fact regarding defendant's alleged dilatory tactics or a failure to investigate or settle plaintiff's claim, those questions went to the merits of the underlying claims, are separate from the court's analysis of arbitrability, and therefore should not have been considered on the motion to compel arbitration.[6]

To the extent plaintiff and the trial court relied on *Hightower*, *supra*, 38 Cal.App.4th 853, such reliance was misplaced. In *Hightower*, the insured was involved in an uninsured motorist accident and demanded the policy limits of $30,000. The insurer disputed the insured's right to policy limits and demanded arbitration. At arbitration, the insured prevailed and was awarded the policy limits. (*Id.* at p. 857.) The insured then filed an action against her insurer, alleging that the insurer's liability for policy limits had been clear before the arbitration and that the insurer had "acted in bad faith by exercising its right to arbitrate rather than settling the claims." (*Id.* at p. 861.) The insurer moved for judgment on the pleadings, based in part on the ground that it had immunity from insurer liability for exercising its right to request arbitration pursuant to section 11580.26, subdivision (b), which states: "No cause of action shall exist against either an insured or insurer from exercising the right to request arbitration of a claim under this section or Section 11580.2." (*Hightower, supra*, 38 Cal.App.4th at p. 861.)

The issue on appeal was "whether a cause of action may be stated

---

[6] We express no opinion on the merits of plaintiff's underlying bad faith claims.

19

against an insurer for demanding arbitration of a claim for uninsured motorist benefits even where the insurer's liability is clear." (*Hightower*, *supra*, 38 Cal.App.4th at p. 856.) The Court of Appeal held that section 11580.26, subdivision (b) does not immunize the insurer from liability for unreasonably demanding arbitration when its liability is clear: "Where there is no issue reasonably to be resolved by arbitration, as in a case where the insured's damages plainly exceed policy limits and the liability of the uninsured motorist is clear, the failure to attempt to effectuate a prompt and fair settlement violates the insurer's statutory duties [citation] and gives rise to tort liability." (*Hightower*, *supra*, 38 Cal.App.4th at p. 863.)

*Hightower* is not controlling. The insured there *obtained* an arbitration award validating her pre-arbitration policy limits demand. (*Hightower*, *supra*, 38 Cal.App.4th at p. 857.) Only then did she file a bad faith action against her insurer. (*Id.* at p. 861.) The court had no occasion to consider the situation here, which involves an insured seeking to proceed with a bad faith action against a UIM insurer without first arbitrating the issue of the amount of UIM damages. Indeed, the trial court here acknowledged that the *Hightower* court "was not . . . faced with a question of whether to order arbitration of an action involving a claim of bad faith, or how to determine such a question."

In addition, unlike the insurer in *Hightower*, defendant here does not dispute plaintiff's right to bring her action for breach of contract and bad faith. In fact, defendant states in its opening brief that it "is not seeking immunity under . . . section 11580.26, subdivision (b), from bad faith claims by filing a motion to compel arbitration."

Furthermore, it cannot be said here that "there is no issue reasonably to be resolved by arbitration." (*Hightower*, *supra*, 38 Cal.App.4th at p. 863.)

20

The foundation of plaintiff's bad faith claim—the amount of UIM damages— remained disputed and had not yet been sent to arbitration when plaintiff filed this action. As discussed, assuming arguendo that a portion of the claimed damages ($30,451.98) was "undisputedly owed" as plaintiff argued, she conceded that the remaining amount of the available policy limits she was still pursuing ($244,548.02) was still "in dispute." Accordingly, *Hightower* is inapposite and does not support plaintiff's assertion that she was entitled to simply bypass arbitration and proceed directly to litigation.

Nor do any of the remaining cases cited in the court's order support the denial of the motion to compel arbitration. In fact, the cited cases are the same ones that the insured and the trial court in *McIsaac* relied upon as a basis to deny the insurer's petition to compel arbitration in that case, and that the appellate court ultimately found distinguishable. (See *McIsaac*, *supra*, 64 Cal.App.5th at p. 424.) We distinguish the cited cases for the same reasons stated in *McIsaac* and therefore adopt its analysis here:

"*Corral* [*v. State Farm Mutual Auto. Ins. Co.* (1979) 92 Cal.App.3d 1004 (*Corral*)] for example, did not involve a petition to compel arbitration, but addressed whether the plaintiff's bad faith action was barred by a prior arbitration award under principles of res judicata. (*Corral*, *supra*, 92 Cal.App.3d at pp. 1009–1010.) In *Corral*, unlike here, arbitration of the plaintiff's UIM claim had already concluded. (*Id.* at p. 1007.)

"Nor is *State Farm Mutual Automobile Ins. Co. v. Superior Court* (2004) 123 Cal.App.4th 1424, helpful to plaintiff. There, the court rejected an *insured's* demand for arbitration because the insurer had already paid the policy limits under its policy with insured, and accordingly, there was no controversy to arbitrate. (*Id.* at p. 1431.) While the appellate court also held that the *insured* was not entitled to arbitration in order to evaluate a possible

21

bad faith suit (*id.* at pp. 1434–1435), that holding has no bearing on defendant's right to arbitrate the amount of UIM damages where, as here, the parties dispute the amount of damages caused by the UIM.

"Finally, the trial court cited *Freeman*, *supra*, 14 Cal.3d at page 480 and *Bouton*, *supra*, 43 Cal.4th at page 1193, for the principle that ' ". . . section 11580.2, subdivision (f) 'read literally, requires arbitration of two issues only: (1) whether the insured is entitled to recover against the uninsured motorist and (2) if so, the amount of the damages.' " ' The quoted language plainly *supports* defendant's right to compel arbitration of the amount of UIM damages. (See *Bouton*, at p. 1203 [insured and insurer must arbitrate all disputes concerning liability and damages arising out of an accident between insured and UIM].)" (*McIsaac*, *supra*, 64 Cal.App.5th at p. 424, fn. omitted.)

In sum, because the parties disagreed over the amount of UIM damages owed to plaintiff, defendant was entitled under section 11580.2, subdivision (f) and the terms of the policy to arbitrate the issue of UIM damages. Accordingly, the trial court erred in denying defendant's motion to compel arbitration.

## DISPOSITION

The order denying defendant's motion to compel arbitration is reversed. The case is remanded to the trial court with directions to grant defendant's motion to compel arbitration of the UIM damages. Defendant is awarded costs on appeal.

_____
Richman, Acting P. J.

We concur:


_____
Miller, J.


_____
Markman, J. *


*Tornai v. CSAA Insurance Exchange* (A167666)

   *Superior Court of Alameda County, Judge Michael Markman, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 1/11/24 after nonpublished opinion filed 12/18/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

KATHRYN TORNAI,

      Plaintiff and Respondent,

v.

CSAA INSURANCE EXCHANGE,

      Defendant and Appellant.

A167666

(Sonoma County
Super. Ct. No. SCV271737)

BY THE COURT:

The opinion in the above-entitled matter filed on December 18, 2023, was not certified for publication in the Official Reports. For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

Dated: _____          _____

                                                        Richman, Acting P. J.

Court:  Sonoma County Superior Court

Trial Judge:  Hon. Bradford J. DeMeo

Chad S. Tapp, Thomas L. Riordan, Tyler J. O'Connell, Porter Scott, for Defendant and Appellant CSAA Insurance Exchange

No appearance for Plaintiff and Respondent, Kathryn Tornai.

*Tornai v. CSAA Insurance Exchange* (A167666)